# Brown *versus* French.

1. One who, in a sudden emergency, acts according to his best judgment, or who, because of want of time in which to form a judgment, omits to act in the most judicious manner, is not chargeable with negligence. Such act or omission, if faulty, may be called a mistake, but not carelessness.

2. A person, while attempting to cross the Ohio river, in a skiff, at a dangerous place, and under dangerous conditions, notwithstanding he was warned of the danger, lost control of his boat, which fouled a barge in tow of a steamer and then swung round under the bow of another barge in the tow. Efforts were made by one of the steamer's crew to rescue the man, which, however, proved unavailing, and he was drowned. Not over two minutes elapsed from the time the skiff lodged against the

[Brown v. French.]

barge until the man went under the tow. In an action brought by the widow of the deceased against the owners of the steamer to recover damages for the alleged negligence of the captain of the steamer in having omitted to back the wheel while the deceased was in the dangerous position:

*Held,* that the facts showed no negligence by the defendants' servants, and, further, that the circumstances showed contributory negligence on the part of the deceased, and the plaintiff, therefore, was not entitled to recover.

November 9th 1883. Before MERCUR, C. J., GORDON, PAXSON, TRUNKEY, STERRETT and CLARK, JJ. GREEN, J., absent.

ERROR to the Court of Common Pleas No. 1 of *Allegheny county:* Of October and November Term 1883, No. 105.

Case, by Margaret J. French, widow of William French, deceased, for herself and for Jennie French and Ella M. French, minor children of said William French, deceased, against Samuel S. Brown and others, partners, doing business under the name of William H. Brown, to recover damages for the death of said William French, caused, as alleged, by the negligence of the defendants' servants.

On the trial, before COLLIER, J., the following facts appeared : On November 28th 1878, the said William French, who lived on the south side of the Ohio river, and was engaged in teaching school on the north side of the Ohio, a short distance above Sewickley, started alone, as was his custom, to cross the river in a skiff. At this point, there is a narrow place in the river called the "trap," where the current is rapid, the water shallow, and the channel narrow. At the time in question, several steamers with their tows were awaiting an opportunity to go up. The Ben Wood was first, having started through the trap, with a full head of steam on ; from fifty to seventy-five yards astern of her was the Charlie Brown with her tow, consisting of seven boats, with a length of four hundred and seventy-five feet, and other boats were in her rear. In order to prevent drifting down stream, the Charlie Brown and other boats kept their wheels in motion ; but the Brown was advancing but slowly, if at all. William French, in his skiff, got in the wash of the Ben Wood, when in some way he lost or broke an oar, and his skiff, becoming unmanageable, drifted down against one of the foremost canal boats in the tow of the Charlie Brown ; it then swung around and lodged under the prow or "rake" of the next barge, which was constructed so as to project or overhang. One of the crew of the Brown ran out and tried to reach French with a pole, but could not, owing to his being under the "rake ;" he then ran and got a line, and as he threw it over the bow, the skiff went under, and French was drowned. The period of time from the moment the skiff lodged under the rake of the barge, until it went under,

[Brown *v*. French.]

according to the evidence, was from one to two minutes. The alleged negligence was the omission of the captain of the Charlie Brown to stop his wheel, or back it, when French's skiff fouled the barge, it being alleged that, by continuing to work against the swift current, he, in effect ran the barge over the skiff, and caused French's death. There was evidence that one or more parties warned French, at or about the time he started, that it was dangerous to attempt to cross under the circumstances, but that he disregarded the warning.

The defendants, in several points, requested the court to instruct the jury, in substance, that there was no evidence to show that the Charlie Brown could have been backed after French was discovered to be in danger, or that if she had been backed, his life could have been saved, and no evidence that his death was in any way caused by negligence of the defendants or their agents.

The court refused so to instruct the jury, and in answer to plaintiff's points, and in the charge, instructed them that if French was not negligent, and the defendants' servants could, by backing the Charlie Brown or by any other action or movement of the boat, have saved his life, but negligently failed to do so, by reason whereof French was drowned, the plaintiffs were entitled to recover.

Verdict and judgment for plaintiffs for $3,045, whereupon the defendants took this writ of error, assigning for error the refusal of their points and the instructions of the court substantially as above.

*D. T. Watson* (with him *Burgwin*), for the plaintiffs in error.

*H. W. Weir*, for the defendants in error.

Mr. Justice GORDON delivered the opinion of the court, January 7th 1884.

From the evidence on part of the plaintiff below we gather the following facts. On the morning of the 28th of October, 1878 the steamer Charlie Brown, owned by the defendants below, with a tow of seven boats, was about to ascend a somewhat swift and narrow part of the Ohio river, a little above the borough of Sewickley, called the trap. Some fifty or seventy-five yards in advance of this craft was the steamboat Ben Wood, which had already reached the swift water, and was exerting her full power in order to gain the head of the ripple. The Brown seems to have been using only steam enough to maintain her position against the current, or, if to advance at all but slowly. Then, some fifty or one hundred yards below this

[Brown *v.* French.]

vessel, came the Joe Nixon with its tow.    Thus we have three powerful steamers with their tows, as we may say, in a line ; one already ascending the swift water, and the other two waiting until the way was cleared in order to do the same thing, and thus reach the upper part of the river.    Just at this time, when the river was thus occupied, William French, the deceased, attempted to pass in a skiff between the forward boats ; about twenty-five yards below the stern of the first, and about the same distance above the tow of the second.    As might have been expected, with no great exercise of prescience, as soon as he struck the swell of the Ben Wood, his oars were unshipped one of them being lost or broken, and he was thus left to drift helplessly down upon the forward boat of the Brown's tow. His skiff, after striking as described, swung around and lodged under the rake of a second boat ; hung there for a few moments, and was then, with its occupant, swallowed up in the water. Some efforts were made to save his life, but the time, not over two or three minutes, was too short to insure success.    Indeed, the period was scarcely sufficient in which to form a plan of rescue, much less to carry it into effect.    Having thus made a statement of the facts as they are related by the witnesses of the plaintiff, we next in order turn to the legal principles governing cases of this kind.    These are few and simple, and need the citation of no authority for their support.    1. The plaintiff, in order to sustain her case, was obliged to show that French lost his life through the negligence of the servants of the defendants.    2. If it appeared that the deceased, by his own carelessness, contributed in any degree to the accident which caused the loss of his life, the defendants ought not to have been held to answer for the consequences resulting from that accident.    Applying these rules to the facts as above stated, and we cannot see how the defendants can be held responsible for the loss of French's life.    Their boat was in its proper place in the river ; it had the right of way ; nothing can be said against the skill with which it was navigated, and without the direct intervention of French himself there could have been no accident.    He voluntarily placed himself in the way of danger, and his death was the result of his own act. It is possible that he might have accomplished his purpose and passed in safety the head of the Brown's tow, had his oars not been unshipped or broken, but this resulted from no act of the crew of the Charlie Brown ; it was not by their act that he was thus cast helpless upon the current of the river ; it was by the swell and wash of the Ben Wood, into which he had voluntarily put himself, that his oars were unshipped and his skiff cast upon the advancing tow.    That his undertaking was an exceedingly reckless and dangerous one, the event proves, but

[Brown *v.* French.]

there was no one to blame for it but himself. He had the
right to try the experiment, obviously dangerous as it was, but
then also upon him rested the consequences of that experiment,
and upon no one else; he may have been, and probably was,
ignorant of the risk which he was taking upon himself, or
knowing it, and trusting to his own skill, he may have regarded
it as easily superable. But in either case, the result of his ig-
norance, or of his mistake, must rest with himself and his
friends and cannot be charged to the defendants. Under cir-
cumstances such as these, it is very clear that the crew of the
Charlie Brown legally owed no duty to French; they might
have left him to reap the fruit of his own folly. Nevertheless,
as we have said, an attempt was made to save his life; unfor-
tunately it was unsuccessful, and it is now said that the effort
was misdirected, or not properly seconded by the pilot of the
steamer; that the boat ought to have been backed. Well, let
it so be, that by a manoeuvre of that kind this man's life could
have been saved; does it follow that it was an act of careless-
ness not to have done so? Certainly not. Here was an accident
sprung upon the pilot for which he was wholly unprepared. In
order to avoid the consequences of it he must first understand
accurately its nature and probable effect; he must then deter-
mine what was best to be done, and this determination must be
had in view of all the circumstances by which he and his craft
were surrounded. All this required time, but the time allowed
in this case was too short for any but an exceptionally active
mind to entertain and execute a successful plan of rescue. Un-
der such circumstances as these we cannot agree that a mistake
in judgment is an act of carelessness. No one can be charged
with carelessness when he does that which his judgment ap-
proves, or where he omits to do that of which he has no time
to judge. Such act, or omission, if faulty, may be called a
mistake but not carelessness.

So the pilot of the Charlie Brown may have made a mistake
in not backing his boat, but he cannot be charged with negli-
gence. Supposing then, this case to rest wholly on the alleged
default of the defendant's agents, we cannot see that any
such default has been proved; we cannot see but that the crew
of the steamboat did all that ordinary men ought to be required
to do in an emergency so sudden and alarming.

But without dwelling longer upon this matter, or consider-
ing particularly any of the assignments of error, we may sum
up the whole case by saying, that in the court below the defen-
dants seem to have been charged rather with the failure of
their servants to save French's life, than with carelessness in the
production of the accident which led to its loss. This was
wrong, and yet, I suppose this theory was adopted as the only

[Socher's Appeal.]

one possible on which to charge the defendants at all. As we have seen, there was no evidence of negligence on part of the crew of the steamer, and even if·there had been, the defendants were exempted from the consequences of it by the contributory negligence of French. That he voluntarily put himself in a place of great danger cannot be denied, and that others should give more heed to his safety than he himself did, could neither be expected nor required.

        The judgment of the court below is reversed.