# Sekerak *v.* Jutte, Appellant.

*Negligence—Sudden emergency—Mistake in judgment.*

A person who without fault on his own part finds himself in the presence of a sudden emergency which imperils the lives of others, and has but a moment of time in which to think and act, cannot be charged with negligence if in acting he makes a mistake in judgment.

*Collision between steamboat and rowboat.*

Plaintiff's intestate and two other men, all inexperienced in rowing, started to cross a river, at a time when a steamboat with floats and coalboat in tow was in full sight coming up the river. After passing the centre of the river and actually clearing the steamboat and its tow, they became frightened, stood up in the boat, lost an oar, and allowed their boat to swing back in front of the steamboat. A collision occurred and plaintiff's intestate was drowned. As soon as the persons in charge of the steamboat saw the peril of the men in the rowboat, they reversed the engine, and did everything possible to avoid the collision. *Held*, that plaintiff was not entitled to recover against the steamboat company.

*Contributory negligence.*

For parties who are not experienced oarsmen, nor accustomed to managing boats, to attempt to cross a river ahead of a steamboat and tow, under the circumstances above, is contributory negligence.

Argued Oct. 27, 1892. Appeal, No. 53, Oct. T., 1892, by defendants, Charles Jutte et al., from judgment of C. P. No. 3, Allegheny Co., Aug. T., 1891, No. 332, on verdict for plaintiff, Theresa Sekerak. Before PAXSON, C. J., STERRETT, GREEN, WILLIAMS, MCCOLLUM, MITCHELL and HEYDRICK, JJ.

Trespass to recover damages for death of plaintiff's husband. The facts appear by the opinion of the Supreme Court. Binding instructions for defendant were refused. [6]

*Error assigned* was, inter alia, (6) instruction, quoting it.

*George C. Wilson*, for appellant, cited Fisher v. Ferry Co., 124 Pa. 154; Brown v. French, 104 Pa. 608; Aiken v. R. R., 130 Pa. 380.

*A. Blakeley*, for appellee.—Brown v. French does not apply.

OPINION BY MR. JUSTICE MCCOLLUM, February 13, 1893:

Joseph Sekerak was drowned in the Monongahela river on the second of May, 1891, and his widow Theresa Sekerak, claiming that his death was caused by the negligence of the appel-

lant's servants in the management of the steamboat "Charles Jutte," having in tow six flats and a coal-boat, brought this action to recover the pecuniary value of his life to her. It appears that near six o'clock in the afternoon of the day of the accident, Joseph Sekerak, Mike Tomko and Albert Reggerts, at Coal Bluff on the Washington county side of the river, entered what is known in that locality as a dog-boat and were rowed by Tomko to the Allegheny county side of it. This action on their part was presumably in the way of recreation, because it was not known to or supposed by the friends of either of them that their business, or any duties with which they were charged, called for it. They were upon the Allegheny side but a few minutes when they saw the "Charles Jutte" with the flats and coal-boat in tow, coming up the river near Cliff Mine on the opposite side about two hundred yards below Coal Bluff. They then re-entered the dog-boat for the purpose and in the expectation of crossing the river ahead of the steamboat and tow. In their attempt to recross, Reggerts sat nearest to the hind or broad end of the boat and rowed it, Tomko sat in the middle and Sekerak in the front or narrow end of it, while the hind end was pointed in the direction of Coal Bluff and the front end toward the Allegheny side. In this position and manner they reached or passed the centre of the river, when, finding themselves near to the steamboat and tow, they became alarmed and lost control of their boat. An intelligent use of the oars at this juncture would have carried them easily to a place of safety. But in the excitement and confusion which resulted from their fears they lost an oar, turned their boat around, stood up in it and precipitated the collision they wished to avoid. This action brought about four feet of the length of their boat in front of the tow on the Washington county side, and as the former came in contact with the latter they jumped or fell into the river. Tomko was rescued and his companions were drowned.

Was the collision caused by the negligence of the appellant's servants? No presumption of negligence arises from the mere occurrence of it, and an affirmative answer to the question must rest on evidence which shows some omission of duty or careless act on their part. In considering this question we must not lose sight of certain important facts which are established

by undisputed testimony, or admitted.   The occupants of the boat, who were not experienced oarsmen, voluntarily attempted to cross ahead of the steamboat and tow which they saw coming up the river before they left the Allegheny side of it; if their boat had been managed with ordinary skill there would have been no collision, and if they had all been in their seats when it came in contact with the tow they would have escaped without injury.

It was justly regarded in the court below as clear and certain that the parties in charge of the tow were not negligent prior to their discovery that the occupants of the dog-boat appeared to be unable to manage it.   The jury were accordingly instructed that their inquiry respecting the alleged negligence of the appellant's servants should be confined to what occurred after such discovery.   There was nothing in the situation or movements of the dog-boat, until it was turned around as before stated, which indicated to the pilot or any person on the steamboat or tow that it was likely to come in contact with the tow, or that the parties in it had from fear or incapacity lost control of it.   On the contrary there is a substantial concurrence in the evidence to the effect that, but for this loss of control, the boat would have been on the Washington county side of the tow and at a safe distance from it when the latter crossed its course.

Eight persons called by the appellants testified that before the boat was turned around it had cleared the tow, and their testimony in this particular was not questioned in rebuttal; nor can we find in the evidence produced by the appellee in chief anything in direct or substantial conflict with it.   It is true that John Roberts, in answer to the question, " Were the three men in front of the tow when they commenced turning around?" said " they were by a matter of ten or twelve feet," but we think his examination taken as a whole shows that he meant they were ten or twelve feet away from the tow at that time.   It will thus be seen that the change in the movement of the boat which brought a portion of it in front of the tow was sudden, unexpected and disconcerting.   The action of the appellant's servants must therefore be considered in the light of the situation which suddenly confronted them.   They were in the presence of an emergency which imperiled the lives of

the men in the boat and, like the pilot in Brown v. French, 104 Pa. 604, had but a moment of time in which to think and act. In that case, Mr. Justice GORDON, after a brief reference to its facts, said: "Under such circumstances as these we cannot agree that a mistake in judgment is an act of carelessness. No one can be charged with carelessness when he does that which his judgment approves, or when he omits to do that of which he has no time to judge. Such act or omission, if faulty, may be called a mistake but not carelessness." If we apply this principle to the present case, it is clear that the appellants are not liable, because the evidence will not allow an inference that their servants were incompetent, or failed to exercise their best discretion and skill to prevent a collision.

But we need not rest the case on this principle. The evidence is clear, convincing and uncontradicted that when it became apparent to the parties in charge of the tow that the men in the dog-boat had lost control of it, the former did all it was possible to do to rescue the latter from the impending danger. The engine was reversed, the forward movement of the tow stopped, and the backward movement of it commenced within a space of time which left no room for conjecture that the action of the appellant's servants was hesitating or tardy. There is not a scintilla of evidence that this change in the movement of the tow could have been effected in less time, or that better action in avoidance of the collision was possible. Where then is the negligence imputable to them? What omission of duty or act of carelessness on their part in connection with this unfortunate occurrence does the evidence disclose? To these inquiries we reply that a careful consideration of all the testimony has convinced us there is nothing in it from which an inference of such omission or act can be justly drawn.

While this conclusion is fatal to the claim of the appellee, it is proper to add that, as the parties in the dog-boat were not experienced oarsmen nor accustomed to managing boats of that description, their attempt to cross the river ahead of the steamboat and tow was, under the circumstances shown, an act of inexcusable negligence.

The sixth specification of error is sustained, and this renders any consideration of the other specifications unnecessary.

Judgment reversed.