# Davis v. Media, Middletown, Aston and Chester Electric Railway Company, Appellant.

*Negligence—Street railways—Speed—Collision between car and wagon—Evidence—Province of court and jury.*

In an action against a street railway company to recover damages for personal injuries and for injuries to a horse, wagon and harness it appeared that plaintiff was driving a heavily loaded wagon at an up grade on defendant's tracks on a highway in the country. In the wagon was a lighted lantern, and in the curtain at the back there was a glass through which the light shown. About fifteen feet behind the plaintiffs' vehicle was another wagon similarly lighted and with a window in the rear curtain. This wagon was also heavily loaded. The night was very dark and foggy. A car struck the wagons from the rear. The first wagon struck was carried a distance

variously estimated from thirty to fifty feet, the second from sixty to eighty feet. The evidence as to whether a bell was rung to give the plaintiffs warning was conflicting. Some of the witnesses testified that it was the darkest night they ever saw. Counsel for the railway company conceded that the car was running at the rate of twelve miles per hour. The motorman testified that he had only time after seeing the first wagon to throw on the brake and bow his head to avoid flying glass when the collision came. *Held,* (1) that the question as to whether the speed of the car was under the circumstances excessive, was for the jury; (2) that the plaintiff had a right to use the part of the road used by the railway track, and the question whether in using it under the circumstances, he was guilty of contributory negligence was for the jury; (3) that a verdict and judgment for plaintiff should be sustained.

Argued Nov. 20, 1903. Appeal, No. 194, Oct. T., 1903, by defendant, from judgment of C. P. Del. Co.; Dec. T., 1901, No. 119, on verdict for plaintiff, in case of Jacob Harrison Davis v. The Media, Middletown Aston and Chester Electric Railway Company. Before RICE, P. J., BEAVER, ORLADY, PORTER, MORRISON and HENDERSON, JJ. Affirmed.

Trespass to recover damages for personal injuries and for injuries to a horse, wagon and harness. Before JOHNSON, P. J.

The circumstances of the accident are stated in the opinion of the Superior Court.

Verdict and judgment for plaintiff for $100. Defendant appealed.

*Error assigned* was in refusing binding instructions for defendant.

*David Wallerstein* and *E. A. Howell,* for appellant, cited: Bornscheuer v. Traction Co., 198 Pa. 332; Thane v. Traction Co., 191 Pa. 249; Reber v. Traction Co., 179 Pa. 339; Kline v. Traction Co., 181 Pa. 276; Harman v. Traction Co., 200 Pa. 311; Yingst v. Ry. Co., 167 Pa. 438; Kaechele v. Traction Co., 15 Pa. Superior Ct. 73; Gaughan v. Traction Co., 189 Pa. 408; Ehrisman v. Railway Co., 150 Pa. 180; Warner v. Railway Co., 141 Pa. 615; Woelfel v. Railway Co., 183 Pa. 213; Callahan v. Traction Co., 184 Pa. 425; Gilmartin v. Traction Co., 186 Pa. 193.

*O. B. Dickinson,* for appellee, cited: Hooper v. Traction Co.,

17 Pa. Superior Ct. 638; Gress v. Ry. Co., 14 Pa. Superior Ct. 87; Thatcher v. Traction Co., 166 Pa. 66; Woelfel v. Ry. Co., 183 Pa. 213; Jones v. Railway Co., 9 Pa. Superior Ct. 65; Ehrisman v. Railway Co., 150 Pa. 180; Gilmore v. Railway Co., 153 Pa. 31; Kestner v. Traction Co., 158 Pa. 422.

OPINION BY PORTER, J., July 28, 1904:

There is but one question presented by this record: was the defendant entitled to binding instructions? This was not the case of a traveler turning and driving suddenly in front of an approaching car. The plaintiff had driven for a long distance upon the tracks of the defendant company along a country road, his wagon was a covered one and was heavily loaded; in the wagon there was a lighted lantern and in the curtain at the back there was a glass through which the light shone, and this under ordinary conditions of the atmosphere ought to have been visible for a considerable distance. About fifteen feet behind the plaintiff's vehicle was another wagon, which was being driven by John W. Hawkins; the rear end of this wagon being about thirty feet from the wagon of the plaintiff. There was also in Hawkins's wagon a lighted lantern and a small glass window in the rear curtain, and this wagon was also heavily loaded. The two teams, in these relative positions, were being driven along the track upon an ascending grade when the Hawkins wagon was struck by a car which approached from behind and carried that wagon and the horse which had been drawing it forward violently against the wagon of Davis who was just in the act of turning from the track, the wagon of Davis was carried round past his horse and finally turned upside down at one side of the track, while that of Hawkins was deposited on its side on the opposite side of the track, the horse of Hawkins was then lying upon the ground but the evidence did not disclose how far he had been dragged. There was a conflict of evidence as to the exact distance which the loaded wagons were carried by the force of the collision. The evidence on behalf of the plaintiffs would have warranted a finding that the Hawkins wagon was carried a distance of from seventy-five to eighty feet, and that that of Davis was carried probably forty-five or fifty feet. Even the testimony produced by the defendant company would have warranted a finding that

Hawkins's wagon must have been carried sixty feet and that of Davis thirty feet, for by the sudden forcing ahead of the latter wagon the position of the horse which had been turning from the track was completely changed, and the wagon was placed between him and the destination towards which he had been previously traveling. This was the result of a collision when the car was moving up grade, and, if the testimony of the motorman is to be believed with the brakes set as hard as he could set them.

When such results follow a collision, under such circumstances, they indicate the exertion of a mighty force, and would justify a finding that the car must have been moving at a very high rate of speed : Gress v. Railway Company, 14 Pa. Superior Ct. 87 ; Hooper v. Traction Company, 17 Pa. Superior Ct. 638.

There was a conflict of evidence as to whether the bell had been rung to give warning of the approach of the car. Davis testified that the only intimation he had that the car was coming was when the trolley wire over his head began to hum, and that he at once started to turn from the track but the collision occurred before he could get out of danger. Hawkins testified that he heard no warning of the danger. Some of the witnesses called by the plaintiff had been passengers on the car, and they testified that the bell had been rung at frequent intervals and immediately before the accident. All of the witnesses, some of whom were disinterested, called by the defendant testified that the bell had been rung. It is very clear that the bell had not been rung to warn this plaintiff, for the motorman testifies that he had not seen either of the wagons until he had almost come into collision with the Hawkins wagon, that he then set his brake hard and threw his head down to avoid injury from the crash of the glass which he expected. The reason for the ringing of the bell was because the night was very dark, and it was rung for the purpose of warning all persons who might possibly be on the track and whom the motorman could not see. The bell may have rung and the plaintiff, sitting in his covered wagon, may not have heard it, while it would be perfectly audible to the passengers sitting in the car.

There can be no question under all the evidence that at the

time the collision occurred the night was very dark. The plaintiff and Hawkins testified that the night was dark, that there was a misty rain, but that they could see the lights as they passed along the road, and Hawkins said that he could see the light through the glass in the rear of the Davis wagon. The motorman testified that it was dark and so foggy that he couldn't see anything, and the car was almost upon Hawkins's wagon before he saw it. Several witnesses called by the defendant company testified that it was the darkest night they ever saw. If these conditions existed it was incumbent upon all the parties to exercise care according to the circumstances. It was the duty of those operating the car to exercise such watchful care as would prevent injury to persons who, without negligence on their part, might not at the moment be able to get out of the way of the car: Kaechele v. Traction Company, 15 Pa. Superior Ct. 73; Woelfel v. Railway Company, 183 Pa. 213; Harkins v. Traction Company, 173 Pa. 146; Gaughan v. Traction Company, 189 Pa. 408; Kestner v. Traction Company, 158 Pa. 422. The degree of care to be exercised must necessarily vary with the circumstances of each case, and when there is a conflict of evidence as to the existence of circumstances which would vary the standard the question must necessarily be passed upon by a jury. When the tracks are laid in a public highway, the driver of a wagon lawfully using them in front of an approaching car, while it is his duty to give way and not obstruct its progress, is entitled to reasonable warning and reasonable time to get out of the way. The employees of the defendant company were bound to keep the car under control and had no right to run the plaintiff down either upon the track or while he was in the act of leaving it. They were bound to use every reasonable effort to avoid a collision : Woelfel v. Railway Company, supra; Holt v. Pennsylvania Railroad Company, 206 Pa. 356.

The plaintiff had a right to use the part of the road occupied by the track of the defendant company; it was a part of the public highway, and making such use of it as was ordinarily and manifestly intended, could not constitute him a trespasser. The servants of the defendant company were bound to operate the car in such a manner as not to expose to unnecessary peril those exercising the right to use the public high-

way who were not themselves guilty of negligence.    The greatest rate of speed consistent with the safety of other persons lawfully using the street or highway may be maintained, but when the rate of speed transcends that limit and makes it impossible for those operating the car to keep it under control, this involves a failure to exercise care according to the circumstances, and is negligence: Kline v. Traction Company, 181 Pa. 276.    A rate of speed which would involve gross negligence upon the crowded street of the built up portion of a city might be altogether reasonable upon a country road, and so a rate which would be strictly prudent during the day or upon a clear night might be culpably negligent when fog and mist make it impossible for those operating the car to distinguish objects a very short distance in front of them.

The motorman who operated the car testified that the car was running at half speed, eight or ten miles an hour.    Another witness testified that the cars on that line were geared to run twenty-five miles an hour; and half rate might therefore be twelve and a half miles an hour.    The learned counsel representing the appellant very fairly placed his estimate of the speed, as indicated by the testimony, at twelve miles per hour. Now twelve miles per hour would certainly be a very prudent rate at which to operate electric cars upon a country road upon a clear night.    The rate at which a car may lawfully run upon a night so dark and foggy that a street car with an electric headlight could not be seen at a distance of 150 feet, is another and very different matter.    The night upon which this collision occurred was such a night, if some of the witnesses called by the defendant are to be credited.    The motorman testified that he had his brake in such a position that he could immediately apply it, and that he only had time after seeing the Hawkins wagon to throw on the brake and bow his head to avoid flying glass when the collision came.    This car must therefore have been running at such a rate that it was impossible, after the motorman discovered that there was a vehicle on the track ahead of him, to even give the driver warning of the approach of the car, much less to afford him time to get out of its way.    We are of the opinion that, under the evidence, the question of the defendant's negligence was for the jury.

The only ground upon which it has been seriously urged here that the plaintiff should be held guilty of contributory negligence is, that to drive upon an electric railway track along a country road upon such a night as this is asserted to have been was in itself negligence. The plaintiff did not turn upon the track in front of an approaching car, he had the lawful right to use the track at all times, unless such conditions existed as would have caused a prudent man to desist from the use. The plaintiff testified that he could plainly see the lights along the road, and that he had a light in his own wagon, and Hawkins who was following him testified that he could see the reflection of that light through the glass in the rear of plaintiff's wagon. A very cautious man might have kept clear of the track, but whether there was danger in using it was by no means clear, and the question of the contributory negligence of the plaintiff was for the jury.

The judgment is affirmed.