## Wessel *v.* Jones & Laughlin Steel Company, Appellant.

*Negligence—Master and servant—Machinery and appliances.*

In an action to recover damages for the death of a boy nineteen years old, employed in defendant's repair shop, it appeared that the deceased, who was an apprentice, was killed while helping a machinist to repair an overhead belt. There was evidence that the master mechanic who was conceded to be a vice principal of the defendant, directed the machinist to repair the belt during the noon hour when the machinery was stopped. The master mechanic directed the deceased to help in the work. While the men were thus engaged another workman who had been directed by the master mechanic to do some work during the noon hour. and who had no knowledge of the repairing of the belt, directed the machinery to be started with the result that the deceased was killed. It was claimed that the deceased was guilty of contributory negligence, in that he adopted a dangerous way of doing the work ; but it did not appear that he had been instructed as to any better way; nor was it established that the machinist with whom the deceased was working was guilty of negligence. *Held*, that the case was for the jury and that a verdict and judgment for plaintiff should be sustained.

Argued April 27, 1905.   Appeal, No. 116, April T., 1905, by defendant, from judgment of C. P. No. 3, Allegheny Co., May T., 1903, No. 523, on verdict for plaintiff in case of Charles A. Wessel and Mary Wessel v. Jones & Laughlin Steel Company.   Before RICE, P. J., BEAVER, ORLADY, PORTER, MORRISON and HENDERSON, JJ.   Affirmed.

Trespass for death of plaintiff's minor son.  Before Mc-
Clung, J.

Verdict and judgment for plaintiff for $1,200.  Defendant
appealed.

*Error assigned* was in refusing binding instructions for
defendant.

*William A. Challener,* with him *John D. McKennan, Clarence
Burleigh* and *James C. Gray,* for appellant.

*Rody P. Marshall,* with him *Thomas M. Marshall,* for ap-
pellee.

Opinion by Henderson, J., July 13, 1905:

The single question presented by the record is, did the
plaintiffs' evidence justify the submission of the case to
the jury?  It appears from this evidence that the son of the
plaintiffs, a young man nineteen years of age, had been at
work about two or three weeks as an apprentice in the machine
shop department of the defendant immediately prior to March
11, 1903.  On that day a machinist, Reginald Makepeace, was
directed by the foreman of the shop to put an overhead belt on
the main shafting.  His instruction was to put the belt on at
dinner time.  Smith was the master mechanic who had entire
charge of that department.  When Makepeace was ready to
put the belt on Smith helped him to straighten it out in the
boiler shop.  About ten minutes before twelve o'clock Make-
peace went to the office and told Smith he would have to have
a man help him put the belt on at dinner time.  Smith re-
ferred him to Thompson and told Thompson to get a man to
help him, whereupon Thompson told Wessel to help Make-
peace put on the belt and to get his dinner afterwards.  At
twelve o'clock the machinery was shut down and Makepeace
proceeded to place the belt on the main shaft.  In doing this
Makepeace took one end of the belt and went up the ladder
first and Wessel followed him with the other end of the belt.
They then proceeded to sew the belt.  After they had been
so engaged for fifteen or twenty minutes the electric motor
which furnished power to the main shaft was set in motion and

the shaft commenced to revolve rapidly. Wessel, in attempting to save himself, was carried around the shaft three times and was then thrown onto the bed of a planer and thus received the injuries from which he died. It was the custom in the mill to stop the machinery from twelve o'clock until a quarter before one while the men were eating their dinners, and the whistle was regularly blown at twelve o'clock. About ten minutes before twelve o'clock on the day of the accident Smith instructed Donaldson, a machinist employed there, to work on a " breakdown job " at dinner time, as he wanted that work out at the dinner hour. Donaldson made the necessary preparation and shortly before half past twelve directed a workman to start the machinery in order to enable him to carry out the instructions of the master mechanic. He was not informed by the latter that Makepeace was engaged in placing the belt, or that anything was being done with the line shafting. Makepeace and Wessel were putting on the belt in the ordinary and usual way in which such work is done. Wessel had not had experience in placing belts on shafting.

The defendant contended that there was no evidence of negligence on its part, and that the plaintiffs' son was guilty of contributory negligence, and the evidence of several witnesses was introduced to sustain this defense. Smith, the master mechanic, denied that he gave orders for the placing of the belt and that he knew that it was to be put up at the noon hour. His recollection was that he saw the belt in place between nine and ten o'clock in that morning. Some of the witnesses testified that there was a safer way to have placed the belt, and that there were ladders which could have been used in performing the work, and an effort was made to show that the accident was the result of the negligence of Makepeace, a fellow servant. A review of the plaintiffs' evidence and a consideration of the inferences which might be legitimately drawn therefrom make it apparent that a prima facie case was presented. From that evidence the jury would have been warranted in concluding that the work in which the deceased was engaged was undertaken by the order of the master mechanic, whose attitude as the representative of the defendant is not disputed. The testimony of Makepeace is positive to the effect that Smith helped him to straighten out the belt shortly before it was put up;

that he told the latter he would have to have a man to help him put it up at dinner time, and that Smith directed Thompson to get the man. It was shown that it was not customary to run the mill between twelve o'clock and twelve forty-five. The workmen engaged in this task would have a right to assume therefore that the shaft would not be set in motion during that time, especially in view of the express instructions which they had to lace and place the belt, and that the defendant would exercise ordinary care in promoting their safety. The evidence is conflicting as to the. proper manner of doing the work assigned to Wessel. The plaintiffs' evidence shows that it was done in a usual and proper way, and one of the defendant's witnesses, McCafferty, when asked what place the men generally took when they wanted to lace a belt answered, " That depends upon a man's own idea where he wants to take; some lace it with the ladder standing against the main shaft, and some at the countershaft, and different ways, just according to a man's own opinion where he wants to lace it, and use his own judgment for safety." If there were a better method, however, it does not necessarily follow that the deceased was chargeable with contributory negligence. He was inexperienced in that kind of work. There does not appear to have been an obviously safe plan of action. If the one adopted was dangerous and one might have been adopted which was safe, it was the duty of the employer to instruct a young and inexperienced servant, and it cannot be held as a conclusion of law that the risk of making a wrong choice was assumed when he entered the defendant's service, and this is particularly true where such person had no reason to believe from anything apparent that there was a better way : Royer v. Tinkler, 16 Pa. Superior Ct. 457.

There is nothing in the plaintiffs' evidence indicating that the negligence of Makepeace was the cause of the injury. " Where the testimony. offered by the plaintiff makes a prima facie case by showing the existence of facts from which an inference of negligence arises, the case is one for the jury. An inference of negligence having once arisen, it remains until overcome by countervailing proof, and whether it is so overcome is a question for the jury; " Rauch v. Smedley, 208 Pa. 175; Davis v. Electric Ry. Co., 25 Pa. Superior Ct. 444.

It has so frequently been decided that where the evidence as to the defendant's negligence or the contributory negligence of the plaintiff is conflicting the question must be submitted to the jury that a citation of authorities is unnecessary. There is evidence supporting the plaintiffs' claim and evidence tending to relieve the defendant from legal liability. The court rightly submitted this issue of fact to the jury.

The judgment is affirmed.