## Sieb v. Central Pennsylvania Traction Company, Appellant.

*Negligence—Street railways—Use of streets—Fright of horse—Duty of motorman.*

1. So long as common user of the streets exists in the public it is the duty of a street railway company to exercise such watchful care as will prevent accidents or injury to persons, who without negligence on their own part, may not at the moment be able to get out of the way

of a passing car. The degree of care to be exercised must necessarily vary with the circumstances of each case.

2. When one who is without fault is unexpectedly placed in a position of peril, he is to be dealt with in the light of his surroundings at that time and he is not necessarily negligent even though his judgment has been wrongly exercised.

3. Where a motorman sees ahead of him a frightened horse and the efforts of the driver to turn the horse across the tracks, at a distance of from sixty to eighty feet, and it appears that he could have stopped his car within thirty feet, but he fails to do so, hits the wagon, and passes beyond it thirty feet before stopping the car, the question of the motorman's negligence is one for the jury. The question of the driver's contributory negligence in attempting to turn the horse as he did, is also for the jury.

*Negligence—Conveyance for hire—Passenger.*

4. The negligence of a driver of a wagon cannot be imputed to a passenger on the wagon, where there is no co-operation between the passenger and driver, and the passenger has no control over the conveyance and does not attempt to exercise any.

Argued March 14, 1911. Appeal, No. 1, March T., 1911, by defendant, from judgment of C. P. Dauphin Co., Sept. T., 1908, on verdict for plaintiff in case of Heinrich Sieb v. Central Pennsylvania Traction Company. Before RICE, P. J., HENDERSON, MORRISON, ORLADY, HEAD, BEAVER and PORTER, JJ. Affirmed.

Trespass to recover damages for the death of plaintiff's son. Before SHULL, P. J., specially presiding.

The facts are stated in the opinion of the Superior Court.

Verdict and judgment for plaintiff for $1,000. Defendant appealed.

*Error assigned* was in submitting the case to the jury.

*C. L. Bailey*, of *Wolfe & Bailey*, for appellant.

*W. M. Hargest*, of *Hargest & Hargest*, for appellee.

OPINION BY ORLADY, J., July 13, 1911:

The plaintiff's son was killed in a collision of a car of the

defendant company with a wagon in which the young man was riding. A verdict of $1,000 was recovered as damages. Carl Sieb, the son, was about twenty-five years of age. He employed John Schmidt, a drayman or expressman residing in Steelton, to take him, with his trunk, to a Harrisburg railway station where he intended to take passage for the. west. Schmidt called for the trunk at the boarding house of young Sieb at half past five o'clock in the morning, and they started for Harrisburg, in an open box or coal wagon. Before they passed out of Steelton, the horse Schmidt was driving frightened at a trolley car, reared and veered around, but yielded to the care of the driver and they proceeded on their way. When they reached Cameron street, the horse again frightened, causing the accident for which a recovery is sought by the plaintiff. The main road at that point is twenty-five to thirty feet in width; on the west side of this roadway there were located the double tracks of the defendant company, which were constructed on the same plane as the public highway. On the extreme western side of the road there was a narrow unused space that could be occupied by a horse and wagon.

When the trolley car was 200 or more feet distant, and approaching from the west on the farther track, the horse exhibited signs of fright; when, Schmidt alleged that he signaled the motorman, and turned his horse in the roadway to cross the tracks at grade, and pass to the other side, so as to have the horse's head turned in the direction the car was going in order to allay his fright, and to have him under better control. He succeeded in turning the unwieldy wagon in the road and crossed the first track in safety, but when leaving the farther track the street car struck the rear end of the wagon. In this collision the son of the plaintiff, who had been riding with Schmidt, jumped from the wagon to avoid injury but he was caught by the car, knocked down, run over and killed. The car passed the place of impact about thirty feet before it was stopped.

The motorman testified that with the appliances then in use on the car he could stop it within thirty to forty feet. The testimony is decidedly conflicting, but there are some important phases of the case which are admitted, and which necessarily required its submission to the jury. The car and the wagon were in clear view of the respective drivers, there being nothing to obstruct the view of either along the track. The testimony shows with reasonable clearness, that the motorman either saw, or should have seen the frightened horse, as well as the endeavor of Schmidt to control him by getting the wagon across the track. He practically admits that from sixty to eighty feet he had this view while the horse was headed for the car track. The evidence fails to show that the car was running at an excessive rate of speed; but from the testimony of the motorman, he had the means at hand to control the car and he permitted it to cover more than twice the distance in which he stated he could effectually stop it, so that a jury would be justified in finding, either that he did not have the car under proper control, or that he ignored his duty in that behalf. Even assuming that Schmidt was going straight across the track, as some of the defendant's witnesses testified, it was the duty of the motorman to be vigilant in controlling his car, in order to avoid a collision. The fact that the car ran on thirty feet after it struck the wagon when the motorman admitted that he could stop his car within that distance, tends to corroborate the testimony of Schmidt, who says that the brake was not on full when he was struck, and when such results follow a collision, they indicate the exercise of a great force, and that the car was not under proper control: Davis v. Electric Ry. Co., 25 Pa. Superior Ct. 444; Woelfel v. Street Railway Co., 183 Pa. 213.

So long as common user of the streets exists in the public, it is the duty of a street railway company to exercise such watchful care as will prevent accidents or injury to persons, who without negligence on their own part, may not at the moment be able to get out of the way of a pass-

ing car. The degree of care to be exercised must necessarily vary with the circumstances of each case: Gilmore v. Passenger Railway Co., 153 Pa. 31; Holt v. Penna. Railroad Co., 206 Pa. 356.

The authorities relied upon by the appellant, Wright v. Street Railway Co., 213 Pa. 318; Dunkle v. Railway Co., 209 Pa. 125; Dryden v. Penna. R. R. Co., 211 Pa. 620, do not control this case. The apparent conflict in the authorities is not due to a varying rule, but to the application of an inflexible rule to the varying facts.

According to the testimony of Schmidt, he was placed in a position of great peril through the fright of his horse, and in attempting to cross the tracks, which in the exercise of his judgment at that time was the most effectual thing for him to do, he had the right to assume, or at least it was not contributory negligence on his part in assuming that the motorman, when sixty to eighty feet distant, would have his car under such control as to permit the horse and wagon to cross the tracks in safety. It may be that his judgment in this regard was wrong but not radically so, as he nearly escaped, for the rear wheel of his wagon was the part struck. Had the car been delayed a mere fraction of time, the collision would have been avoided. It has been repeatedly held that no error in a close calculation of a chance can relieve from the charge of contributory negligence: Tozer v. Ry. Co., 45 Pa. Superior Ct. 417. That rule is founded upon a voluntary choice of acts, and it is equally true that when one who is without fault is unexpectedly placed in a position of peril, he is to be dealt with in the light of his surroundings at that time and he is not necessarily negligent even though his judgment has been wrongly exercised: Sekerak v. Jutte, 153 Pa. 117; Floyd v. R. R. Co., 162 Pa. 29; McAnally v. Penna. R. R. Co., 194 Pa. 464. In this case Schmidt did not act voluntarily. The situation was suddenly forced on him and he was obliged to act instantly by reason of the fright of his horse.

In McMahen v. White, 30 Pa. Superior Ct. 169, in

many particulars like this case, we held that the duty is to exercise ordinary and reasonable care, or, as otherwise expressed, the care of an ordinarily prudent man, and this varies with the circumstances. It is the province of the court to instruct the jury that the omission to exercise such care is negligence, and the province of the jury to determine whether the conduct of the party, established by the weight of the testimony, involved the omission of such care. Where the measure of duty varies, where a higher degree of care is demanded under some circumstances than under others; where both the duty and the extent of performance are to be ascertained as facts, a jury alone can determine what is negligence, and whether it has been proved.

On the other branch of the case we feel that there is no room for doubt. Carl Sieb was clearly a passenger carried for hire. He had no control over the horse, or its driver. The negligence of a driver, under such circumstances, cannot be imputed to a passenger: McMahen v. White, 30 Pa. Superior Ct. 169; Thompson v. Railway Co., 215 Pa. 113; Carr v. Easton City, 142 Pa. 139; O'Toole v. Railway Co., 158 Pa. 99; Little v. Telegraph Co., 213 Pa. 229; Jones v. Railway Co., 202 Pa. 81.

It may well be that if the negligence of a passenger cooperate with that of a driver, the passenger cannot shield himself behind the driver's negligence, whether he be in the conveyance for hire, or voluntarily there for pleasure. But if, on the other hand, there is no co-operation between the passenger and the driver, and the passenger has no control over the conveyance, and does not attempt to exercise any, the negligence of the driver cannot be imputed to the passenger. The case is a very close one, but we feel that it was properly tried in the court below.

The assignments of error are overruled and the judgment is affirmed.