Weinberg, Appellant, *v.* Pavitt et al.

Argued April 22, 1931. Before Frazer, C. J., Walling, Simpson, Kephart, Schaffer and Maxey, JJ.

*Maxwell Pestcoe,* for appellant.—It is well settled that a party is entitled to a simple affirmance or refusal

of a point that is properly drawn: Kuhn v. R. R., 261 Pa. 147; Lingle v. Ry., 214 Pa. 500; Citizens Pass. Ry. v. Ketcham, 122 Pa. 228.

As to the verdict being against the incontrovertible physical facts appearing from the measurements of the streets and the testimony of the defendant, Pavitt: Hoffman v. R. R., 215 Pa. 62; Davis v. Ice Co., 285 Pa. 177; Feldman v. Chernekoff, 291 Pa. 456; Alperdt v. Paige, 292 Pa. 1; Fortune v. Dolfinger, 97 Pa. Superior Ct. 545; Powers v. Wiebe, 86 Pa. Superior Ct. 392; Westcott v. Geiger, 92 Pa. Superior Ct. 80.

For cases in which the plaintiff was not permitted to recover because he was not prepared to stop immediately if danger threatened, see Gray v. Fox, 69 Pa. Superior Ct. 218, and Ellison v. Atlantic Refining Co., 62 Pa. Superior Ct. 370.

For failure to charge although requested to do so, on the question of drivers being suddenly placed in danger, see Stover v. R. R., 195 Pa. 616; Amey v. Erb, 296 Pa. 561; Community Fire Co. v. Pa. P. & L. Co., 92 Pa. Superior Ct. 304; Weiss v. Rys., 301 Pa. 539.

A verdict, rendered as the result of control exercised by trial judge as shown by his remarks, comments and interruptions and by the argumentative character of the charge and undue prominence given defendant's side of the case, should be set aside and a new trial ordered: Sarshik v. Fink, 292 Pa. 256; Wenger v. Barnhart, 55 Pa. 300.

*Langdon W. Harris,* of *Herman & Harris,* for appellee.—Failure to answer a point does not constitute error if its subject-matter is elsewhere passed upon in the charge: Warruna v. Dick, 261 Pa. 602.

As to the verdict being against the incontrovertible physical facts appearing from the measurements of the streets and the testimony of the defendant, Pavitt, see Coleman v. Patton, 84. Pa. Superior Ct. 555; Galvin v. Kreider, 293 Pa. 395; Brayman v. Dewolf, 97 Pa. Su-

perior Ct. 225; Keystone Lead Co. v. Frechie, 94 Pa. Superior Ct. 395; Anderson v. Ry., 251 Pa. 517.

OPINION BY MR. JUSTICE MAXEY, June 27, 1931:

Plaintiff brought this action against M. E. Pavitt and Ethel Kale, jointly, charging them with causing the death of her husband by the negligent operation of their respective automobiles. Defendant Kale's automobile at the time of the fatality was driven by her daughter, aged eighteen years. Pavitt, aged twenty-six, was accompanied by his wife. Miss Kale was accompanied by her mother, sister and brother. They sat in the rear seat. Plaintiff's husband was on May 6, 1930, sitting in the front doorway of a store where he was employed. This store was located on the northeast corner of Ninth and Bainbridge Streets, Philadelphia. The defendant Pavitt's car was being driven easterly on Bainbridge Street; the Kale car was being driven northerly on Ninth Street. The two cars collided at this intersection and as a result the Kale car ran upon the curb and fatally crushed plaintiff's husband as he sat in the store doorway. The question of the negligence of the defendants was submitted to the jury. The jury returned a verdict against the defendant Kale for $8,000, but as to the defendant Pavitt, he was held blameless and the verdict was in his favor. Plaintiff asked for a new trial, and this was refused.

Pavitt testified that he approached the intersection at a speed of fifteen or twenty miles an hour and that when he was between the building and curb lines just before he got to Ninth Street he saw the Kale car forty or fifty feet to the right and coming toward the crossing. He said, "I judged I had ample time to cross the street before she came and proceeded across." Miss Kale's brother described Pavitt's speed as "terrific." An apparently disinterested witness testified to Pavitt's speed as being twenty-five miles an hour and that Miss Kale came up Ninth Street slowly over the crossing. It is clear from

the evidence that both cars reached the east side of the intersection (where the collision took place) at the same time. Miss Kale turned to the right to avoid the impact, and Pavitt turned to the left for the same purpose. The photographs and description of the damage sustained by the respective cars show that the left rear of the Kale car came in contact with the right rear of the Pavitt car. After the impact the Kale car continued in the direction in which the impact had turned it, jumped the curb and killed the plaintiff's husband.

The trial judge presented the case to the jury on the theory that Pavitt was justified in attempting to cross the intersection unless the Kale car was either in advance or was approaching the intersection at or about the same time as the Pavitt car. The trial judge said in his charge: "All things being equal, a car coming on the right has the right of way......If, as a matter of fact, the Kale car was approaching the intersection of Ninth and Bainbridge Streets at about the same time, certainly if it was in advance, there is no question about it, if it was in advance of the Pavitt car, then the Pavitt car should have given the Kale car the right of way." The clear implication of that instruction is that Pavitt would have been justified in crossing that intersection as he did unless the Kale car (on the right) had reached the intersection in advance or at or about the same time. This is not the complete rule of law relating to crossing intersecting streets as laid down by the appellate courts of Pennsylvania.

In Curry v. Willson, 301 Pa. 467, 471, this court, speaking through Mr. Justice SADLER, said: "It is true that a driver, situated as was plaintiff, must nevertheless exercise due prudence, and cannot insist on the right to advance when he sees that a collision will result from so doing, and he is able to stop and prevent the accident. ......Where the facts indicate that, though first reaching the intersection, he did not have time to pass in front

of the motor given by law the right to advance, and attempts to do so, causing injury, liability attaches."

In Alperdt v. Paige, 292 Pa. 1, this court said of the movements of cars at an intersection: "Instead of keeping any watch on the movement of the automobile coming toward him down the hill, he [the driver on the left] increased his momentum, and failed to look for the defendant until he had traversed 40 feet, and practically crossed its center. It follows that he contributed to the accident, either by failing to continue to observe, or by testing what was apparently an obvious danger in recklessly advancing when he knew defendant was approaching rapidly from the right." Pavitt did about the same thing in this case. He testified that he did not turn his head to look at the Kale car after he saw it forty or fifty feet away. He said: "I could see it a little bit; I didn't turn around and look at it."

In Lochetta v. Cunningham Cab Co., 98 Pa. Superior Ct. 4, 6, the court said in an opinion by Judge KELLER: "The car approaching from the left only has the right of way when it arrives at the intersection so far in advance of the car on its right that a reasonably prudent man would be justified in believing that he could clear the intersection of the paths of the two vehicles before the other car arrived there."

In Weber v. Greenebaum, 270 Pa. 382, this court laid down the rule that the provision in the Motor Code governing the conduct of motorists at street intersections means that "where the paths of two approaching vehicles cross at the intersection of public streets, the driver at the left must give way, unless so far in advance of the other "as to afford reasonable time to clear the crossing and thus, in all probability, avoid a collision."

If in the case before us Pavitt had been suing Mrs. Kale for damages to his car caused by the collision, it would have been the duty of the trial judge to rule as a matter of law that he was under his own testimony guilty of contributory negligence. When he was between

the houseline and curbline just before the intersection he saw the Kale car forty or fifty feet to the right on Ninth Street. He said, "I judged I had ample time to cross the street before she came and proceeded across." He testified that he was driving at the rate of fifteen to twenty miles an hour. Miss Kale said she was driving her car between fifteen and eighteen miles an hour. A car traveling fifteen miles an hour covers twenty-two feet per second. Therefore, according to Pavitt's own testimony, he allowed himself only the two seconds which would elapse while the Kale car was being driven forty-four feet, to take his car from a point between the house line and curb line to a point beyond the intersection. Each street at the intersection was fifty feet wide between house line and house line. The distance from curb to curb was twenty-six feet. If Pavitt was halfway between the house line and the curb line, as he said he was, he would have had to travel at least thirty-two feet before he could clear the eastern curbline of Ninth Street and be out of the path of the Kale car coming down the east side of Ninth Street. He therefore took the risk of traveling thirty-two feet while the car on his right was traveling forty or fifty feet to the intersection in two seconds or less. This was a chance amounting to negligence on the part of Pavitt, and while the trial judge could not have instructed the jury that Pavitt, a defendant, was guilty of negligence as he could have charged that Pavitt was guilty of contributory negligence if the suit had been Pavitt against Kale, nevertheless the trial judge should have adequately and accurately instructed the jury as to the duties of a driver situated on the left, as was Pavitt, when he was about to cross an intersecting street when a car was approaching the same intersection at a distance of forty or fifty feet at the rate of fifteen to eighteen miles an hour. These instructions the court did not give. On the contrary, the trial judge in his replies to the requests made

by the plaintiff gave instructions that fell short of the legal requirements and were prejudicial to the plaintiff.

The first assignment of error is the court's failure to affirm, without qualification, the plaintiff's first point for charge, as follows: "At crossings of streets, drivers of all motor vehicles must be highly vigilant and maintain such control of their cars, that, on the shortest possible notice, they can stop so as to prevent damage or injury." The court's answer was: "That is a correct statement of the law, and I affirm that point. Its application to a case depends on what facts you find. For instance, to make that clear, if you find as a fact the situation in the case, that Mr. Pavitt got to Ninth Street well in advance of the other car, and had already passed the Ninth Street tracks before the Kale car got out of control and lunged forward, then, though it is a rule of law, it would have no application because the Pavitt car was already past the point of the intersection and in that circumstance it would be more prudent for him to proceed rather than to stop." The point submitted by the plaintiff was, as the court said, a correct statement of the law, and it should have been affirmed without qualification. In the court's qualifications there are several errors. In the first place, there is no evidence upon which it could be found as a fact that Pavitt got to Ninth Street "well in advance" of the other car. According to Pavitt's own testimony, when he was between the house line and the curb line the Kale car on the right was down the street only about forty or fifty feet, i. e., in chronological terms, less than two seconds away at the rate at which even Pavitt himself said it was traveling. He testified: "I was not going over twenty and don't imagine the other car was either." Under the decision of the appellate courts of Pennsylvania, the car on the right only forty feet away and proceeding at that rate of speed is not so far away that the person approaching on the left, when he is between the house line

and curb line, can be said to be "well in advance" of the car on the right.

Another error in the qualification is the intimation that the Kale car got out of control and lunged forward before the actual impact. The condition of the cars and other evidence in this case show that what actually happened was when Miss Kale saw that a collision was imminent she veered her car to the right, and when Pavitt saw the same thing he veered his car to the left. The left rear of the Kale car then came into collision with the right rear of the Pavitt car. The collision was not due to any lunging forward, but to the fact that both cars tried to occupy the same space at the same time. Furthermore, if the Kale car had gotten out of control and lunged forward before the actual impact and if this loss of control on the part of Miss Kale had been due to the negligent act of Pavitt in bringing his car to a point which threatened the Kale car with immediate collision, Pavitt could still be held guilty of negligence. The court should have made it clear to the jury that when Pavitt saw the Kale car on his right a distance of only forty or fifty feet away, it was his duty to keep that car constantly in view and not to proceed across the intersection regardless of the superior rights of the Kale car and of the danger of collision.

Photographs offered in evidence and attached to appellee's paper book show that the principal damage to the Pavitt car was to the right rear wheel and fender. On the Kale car, the damages were described by a city detective who examined both cars after the accident, as follows: "The right front light bent back, and lens broken; the front part of the bumper broken off in front; frame bent; rear left fender scratched, and a small dent in the top of the car." He said the front of the car was all right. As this car after the accident mounted the curb and crashed into the doorway where plaintiff's husband was sitting, it is at least a fair inference that the injury to the right front light and front

part of the bumper took place after the actual impact of the two cars. The trial judge himself said at one stage of the case: "The witness said it dragged along the left side of the car [evidently meaning the Kale car]; that is plain enough to anybody."

Another error in the qualification is the intimation that the Pavitt car was already past the point of intersection. The evidence is to the contrary. Both cars were in the intersection at the same time.

The first assignment of error is sustained.

The second assignment of error relates to the court's refusal to affirm the second point, as follows: "The test of control is the ability to stop quickly and easily. When this result is not accomplished the inference is obvious that the car was running too fast, or that proper effort to control it was not made." The court answered: "The second point I decline as it is unnecessary. It has been covered." This point or request was copied verbatim from the language of this court in Lorah v. Rinehart, 243 Pa. 231, 234. We said in the case of Galliano v. East Penn Electric Company, 303 Pa. 498, 503, that: "It is the duty of the driver of a......motor vehicle to have at all times his car under control, and having one's car under control means having it under such control that it can be stopped before doing injury to any person in any situation that is reasonably likely to arise under the circumstances." When Pavitt saw the Kale car coming up the street on the right only forty feet from the intersection and driving at the rate of forty or fifty feet in two seconds, a normal consideration of the situation would have suggested to him that this oncoming car might try to cross the intersection before he crossed, and he therefore should have had his car under such control that he could in that situation have stopped it before colliding with the Kale car. This he did not do. He took the chance of crossing ahead of the Kale car, and the collision resulted. The second point should have been affirmed, because it was not covered in the charge.

However, in affirming a point thus drawn in the language of the excerpt quoted from Lorah v. Rinehart, care should be taken that the word "obvious" is understood by the jury as not meaning that negligence is presumed as a matter of law when a car is not stopped quickly and easily before doing damage. This court in the case from which the excerpt is cited was pointing out the duty of motorists to keep their cars, as Mr. Justice POTTER there said, "under good control so that they may be promptly brought to a halt, if need be"; and the doctrine laid down in that case is that if a motorist does not stop his car before inflicting injury upon others under circumstances where a prudent man would realize that a car might have to be stopped quickly and easily to avoid inflicting injury, the jury could obviously, i. e., readily or clearly, infer negligence from the motorist's not stopping under the circumstances of that case. In the case from which the excerpt is quoted, Mr. Justice POTTER concluded his discussion by saying: "We think the questions here in controversy were matters of fact and as such were properly for the determination of the jury."

There is no place where collisions between automobiles are so likely as they are at the unguarded intersections of much used streets. Therefore, motorists about to cross such intersections must be highly vigilant and exercise extreme care in avoiding accidents and not merely depend for a "safe passage" exclusively on some theoretical "right of way" which they may possess or think they possess. Abstract rights sometimes have to yield to concrete facts.

The second assignment of error is sustained.

The third assignment of error relates to the refusal of the court to affirm the third point, as follows: "Care at street crossings is the highest duty of motorists." The answer of the court was: "The third point has been covered." This third point is taken verbatim from the language of this court in Newman v. Protective Motor

Service Co., 298 Pa. 509. In that case, Mr. Justice SCHAFFER, speaking for the court, said: "We have laid down the rule in a number of cases that at crossings the drivers of all motor vehicles must be highly vigilant and maintain such control that, on the shortest possible notice, they can stop their cars so as to prevent danger to pedestrians having the right to cross the streets at crossings and to rely on the drivers of automobiles not to run them down, and we have categorically said that, 'Care at street crossings is the highest duty of motorists': Johnson v. French, 291 Pa. 437, 439; Gilles v. Leas, 282 Pa. 318." The subject matter of the third point was not sufficiently covered in the instructions of the trial judge. The third assignment of error is sustained.

The chief deficiency in the charge was that it did not instruct the jury that Pavitt would have no right to proceed across the intersection unless his car was, as this court has said, "so far in advance of the other as to afford reasonable time to clear the crossing." The trial judge did not impress upon the jury the high degree of vigilance required of the driver of the Pavitt car as well as of the driver of the Kale car in negotiating this intersection. It is true that in his qualification of the first point the trial judge said: "It is a rule of law that approaching a crossing you must have your vehicle under such control as to be able to stop it, not instantly, but in the shortest possible space." But he then said immediately: "When we speak of one approaching a crossing, we certainly do not mean one is past the crossing." And just a few lines before that, he strongly intimated that the Pavitt car was already past the point of intersection before the Kale car got out of control and lunged forward. In view of these statements, the laying down of the rule about the car being under control could be interpreted by the jury as having no application to the Pavitt car on account of the court's unmistakable intimation that the Pavitt car was already past the inter-

section before the Kale car reached there, whereas the evidence is to the contrary.

The fourth assignment of error is that the verdict was against the incontrovertible physical facts appearing from the measurement of the streets and the admitted testimony of the defendant, Pavitt. What the physical facts were was a matter for the jury's determination, and if the case had been submitted to the jury under proper instructions the verdict would not be set aside. The fourth assignment of error is overruled.

The fifth assignment of error relates to what the appellant considers unwarranted remarks on the part of the trial judge in replying to what the appellant considers a legitimate argument made by him in his closing address to the jury. We need not discuss this assignment further than to say that while it is the right and duty of the trial judge to instruct the jury on matters of law and to remove any erroneous impressions as to the law or other important matters which counsel may have given to the jury, the trial judge should use only such language as is essential to the requirements of the situation and should not unnecessarily belittle counsel's argument or cast unwarranted reproaches on counsel. In the eyes of the jury, counsel and client are so closely identified that a trial judge's belittling or apparent belittling of counsel is often prejudicial to the client.

The sixth assignment of error is as follows: "In failing to charge, although requested to do so, that if Pavitt placed the Kale car by his negligence in a position of peril and the girl driving the Kale car did not exercise the best judgment under the circumstances, that she was not negligent." The court answered: "I told them that if they had that view, then Kale was not responsible at all, and it was Pavitt's fault." We find in the charge no instructions covering the matter of Miss Kale's judgment being disturbed by the peril with which she was confronted by the alleged negligence of Pavitt. The request to charge which was referred to in the sixth as-

signment was made orally, in direct violation of the rule of the court which requires points to be submitted in writing before the charge is begun. This assignment of error we will therefore overrule. But since the case is to be tried again, we here state that it is important in cases such as this that the jury be adequately instructed as to the possible blamelessness of one who makes an error of judgment because another has placed him or her in a situation where it makes it unreasonable to hold that person to the detached exercise of cool and correct judgment.

This court said in Amey v. Erb, 296 Pa. 561, 565: "Where one finds himself in a position of danger which is not the result of his negligence, he is not responsible if he make a mistake of judgment in getting out." Stover v. Penna. R. R. Co., 195 Pa. 616, is to the same effect.

In Wilson v. Consolidated Dressed Beef Co., 295 Pa. 169, this court held that where a person is placed in sudden peril by another's negligence he is not required to exercise perfect judgment.

In Weiss v. Pittsburgh Ry. Co., 301 Pa. 539, 543, this court, in an opinion by Mr. Justice KEPHART, said: "The situation of danger arose after he was committed to the crossing. His acts with regard to negligence must be judged from the circumstances as they then appeared. In his position one is not required to exercise the highest or even an ordinary degree of judgment; it is a judgment arising from peril, or care under the circumstances. 'One placed in sudden peril without his fault is not responsible for an error of judgment': Knepp v. B. & O. R. R., 262 Pa. 421."

The chief prejudicial error which permeates the charge of the court below was in not making it sufficiently clear to the jury that though it was the Kale car that actually killed plaintiff's husband, yet the proximate or at least a contributing cause of that fatal injury might have been the actions of the driver of the Pavitt car. As the Superior Court said in Community Fire Co. v. Penna.

P. & L. Co., 92 Pa. Superior Ct. 304, 307: "It is a recognized doctrine that negligence may be the proximate cause of an injury of which it is not the sole or immediate cause. Where such negligence concurred with some other event to produce the plaintiff's injury so that it sufficiently appears that the injury would not have been sustained except for such negligence, and where both the circumstances are closely connected with the injury in the order of events, the defendant is responsible even though his negligent act was not the nearest cause in the order of time." This same rule is laid down by this court in Wood v. Penna. R. R. Co., 177 Pa. 306, and Boggs v. Jewel Tea Co., 266 Pa. 428.

There were issues of fact raised at the trial, and if these issues had been presented to the jury under adequate and accurate instructions we would not order a new trial, even though we felt that a different verdict could from the evidence have been properly returned. However, in this case the instructions were inadequate in law and in many respects prejudicial to the plaintiff's case against Pavitt.

The judgment is reversed with a venire facias de novo.