Miller, Appellant, *v.* Southern Asphalt
Company et al.

Argued January 15, 1934. Before FRAZER, C. J., SIMPSON, KEPHART, SCHAFFER, MAXEY, DREW and LINN, JJ.

*W. C. Sheely,* with him *John D. Keith,* of· *Keith & Sheely,* for appellant.

*George Hay Kain,* with him *Raymond F. Topper* and *George Hay Kain, Jr.,* for appellee.

OPINION BY MR. JUSTICE SCHAFFER, March 19, 1934:

Plaintiff brought this action to recover damages for the death of his wife, who was killed in a collision between the Ford automobile in which she was riding as a guest and a truck belonging to defendant. The jury found a verdict in plaintiff's favor and the court entered judgment non obstante veredicto for defendant. Plaintiff appeals.

The collision took place on the Lincoln Highway, east of Gettysburg. The two vehicles were proceeding in the same direction—east. Defendant's truck was ahead and between it and the Ford automobile was another truck, a Reo, likewise traveling east. All three were proceeding on the south side of the highway. The Ford car was

driven by a young man named Hockensmith. The deceased and her mother were occupying the rear seat.

Hockensmith passed the Reo car and was overtaking defendant's truck, which was carrying a load of oil to be spread on the Hunterstown Road, which intersects the Lincoln Highway from the north, but does not cross it. He admitted that, when he was about 100 feet behind defendant's truck, he saw defendant's driver put out his left hand. When he was about 50 feet from the truck he pulled over to the left to go around it, at the same time accelerating his speed to between 35 and 40 miles an hour. When he turned out to pass the truck, the arm of the driver was still extended. He did not see it withdrawn. As Hockensmith was part way past the truck, defendant's driver turned to the left into the intersection of Hunterstown Road and the two vehicles collided. The automobile turned completely over and both women were thrown out and killed.

The Lincoln Highway for some distance west of the intersection of the Hunterstown Road is made of concrete 20 feet wide with an expansion joint in its center. Defendant's truck was 25 feet 4 inches long, 7 feet 9 inches wide and weighed between 11 and 12 tons. Hockensmith testified that he knew about the intersecting Hunterstown Road, but did not think of it as he approached. The county engineer who made a plan of the locality said the intersection could be seen for at least 150 feet from the direction of Hockensmith's approach. Asked why he attempted to pass the truck at the point he did, Hockensmith replied that it pulled over to the right of the highway until its right rear wheel was off the concrete, and he was under the impression it was going to park on the right-hand side of the road. He admitted that when he was passing the truck he did not have his automobile under such control that he could stop it immediately. He said that at the time of the collision he was looking ahead, not watching the truck, that the front end of his car had passed the truck when the

collision occurred, and that his car was struck back of the front door. He did not recall having passed the Reo speed wagon. He testified that as he approached the truck he sounded his horn. None of the other witnesses heard it.

Young, the driver of the Reo car, testified that he was following defendant's truck and saw the operator put out his left arm and slow down as he approached the intersection, keeping to the right side of the road as near the edge as possible. The driver of the truck started to make a turn to the left, and as he did so, Hockensmith's car passed the Reo, which had slowed down almost to a stop waiting for the oil truck, which was moving about 10 miles an hour, to make the turn. The witness stated that defendant's driver had started to make the turn at the time the Ford car passed the Reo, and that, in order to make it, the oil truck had to bear over to the right side of the highway. Young was corroborated in his statements by a witness who was riding with him on the front seat.

Pritchard, the driver of defendant's truck, testified that in his mirror he noticed the Reo truck behind him, but did not see the Ford car until he was about to execute the turn, when it came out from behind the Reo truck on the left side of the road, that as he was making the turn his line of vision from the mirror changed and he could not see the Ford, and, as he passed over the center of the highway, he glanced and saw the Ford strike his left fender. It then ran into the bank alongside the road and turned over. Hardwick, who was an employee of defendant, had gotten out of the cab of the truck onto the fender on the right-hand side to watch traffic as Pritchard came to make the turn. He told Pritchard the Reo truck was coming, but that it was slowing down. He then looked to the front, saw it was clear, and looking behind saw the Ford car even with the rear of the truck and called to Pritchard to look out.

Owing to the speed of the Ford, the collision could not be avoided.

The suit was brought against the appellee, which brought in Hockensmith as an additional defendant. The latter has not appealed. The jury evidently believed both defendants to be at fault, as they found a verdict for $6,729.80 "to be divided equally between both defendants."

The problem confronting us is whether appellant's driver was negligent. To determine this question, certain sections of the Motor Vehicle Code of May 1, 1929, P. L. 905, as amended by the Act of June 22, 1931, P. L. 751, 75 P. S. 522 et seq., must be considered, as they fix the rights and duties of the operators of the two cars with which we are concerned:

"Section 1005. Keep to the Right in Crossing Intersections or Railway Grade Crossings.—In crossing an intersection of highways, or in crossing a railway grade crossing, the driver of a vehicle shall, at all times, cause such vehicle to travel on the right half of the highway, unless such right half is obstructed or impassable."

"Section 1008. Limitations on Privilege of Overtaking and Passing.—(c) The driver of a vehicle shall not overtake and pass any other vehicle, proceeding in the same direction, at any railway grade crossing, nor at any intersection of highways unless such intersection or crossing is controlled by traffic signal, or unless permitted so to do by a watchman or peace officer."

"Section 1011. Turning at Intersections.—(b) The driver of a vehicle intending to turn to the left, shall approach such intersection in the lane for traffic to the right of and nearest to the center line of the highway, and, in turning, shall pass to the left of the center of the intersection, keeping as close as shall be practicable to the center of the intersection, except that, upon streets laned for traffic and upon one-way streets a left turn shall be made from the left lane of traffic in the direction in which the vehicle is proceeding.

"Section 1012. Signals on Starting, Stopping or Turning.—(a) The driver of any vehicle upon a highway, before starting, stopping or turning from a direct line, shall first see that such movement can be made in safety, and, if any pedestrian may be affected by such movement, shall give a clearly audible signal by sounding the horn, and whenever the operation of any other vehicle following may be affected by such movement, shall give a signal, as required in this section, plainly visible to the driver of such other vehicle, of the intention to make such movement. 1. Whenever the signal is given by means of the hand and arm, the drier shall indicate his intention to start, stop, or turn, by extending the hand and arm horizontally from and beyond the left side of the vehicle, or, if he is driving a closed vehicle, by his hand and arm in such a way as to be visible through the window in the rear of the vehicle."

There is no question that the driver of defendant's truck gave the proper signal by extending his left arm from the cab. Hockensmith admits he saw it first when he was about 100 feet from the truck, and that when he turned out to pass the truck the arm was still extended. Without dispute, therefore, defendant's driver complied with the law so far as giving a signal is concerned. Hockensmith construed the signal as meaning that the truck driver intended to park on the right side of the road, but there is nothing in the law warranting such an inference. The signal meant that the moving truck was going to stop or turn. When defendant's driver gave the signal, there was nothing to indicate to him that he could not turn in safety. The truck was a large one, 23 feet long, and it was necessary to pull over to the right edge of the highway in order to swing it into the intersecting road. Hockensmith did nothing to control his car or to make sure of what the truck driver was going to do. He acted upon his mistaken surmise. The truck driver, having given the required signal, was entitled to assume that Hockensmith would

take account of it and operate his car prudently: Lewis v. Wood, 247 Pa. 545, 550; Newman v. Protective Motor Service Co., 298 Pa. 509, 512; Adams v. Gardiner, 306 Pa. 576, 581. See also 42 C. J. page 971. As the truck reached the intersection and the Ford was approaching, the truck driver had the right to rely upon Hockensmith to obey the law and not to pass him: Giles v. Bennett, 298 Pa. 158.

Plaintiff argues that it was negligence for the truck driver to drive to the right side of the highway. We are unable to see any negligence in this. If the truck driver had pulled over to the right side of the highway and stopped short of the intersection and then proceeded to execute the left turn, there might be ground for plaintiff's contention, but he did not do this. He kept in motion.

We are of opinion that subsection (b) of section 1011 of the Motor Vehicle Code has no application to the defendant's truck and the left turn it was making. This section provides for the approach of vehicles where there are more than two lanes of travel in the highway. It does not cover such a case as this, where there are but two lanes of travel, one for eastbound traffic and the other for westbound, and where the road is but 20 feet wide. This section requires a driver to approach an intersection "in the lane for traffic to the right of and nearest to the center line of the highway." If this section applies to a 20 feet wide road with but two lanes of travel, then the truck driver did approach the intersection in the lane for traffic to the right of and nearest to the center line of the highway and on turning passed to the left of the center of the intersection. The failure on the part of the driver of the truck to approach the intersection in the "lane for traffic to the right of and nearest to the center line of the highway," if he did not so approach it, would not render appellant liable, unless his failure to do so was the proximate and efficient

cause of the collision. In our opinion it was not: Richards v. Warner Co., 311 Pa. 50, and cases cited.

It is also argued by appellant that it is negligence on the part of the operator of a motor vehicle intending to turn left into an intersecting road, to look into his rear vision mirror at a point 25 to 50 feet before reaching the intersection and not to look to the rear again before turning, when his first observation discloses a car to the rear in the act of passing another vehicle. We are unable to follow this line of thought. The truck driver did look in his mirror when he was within from 25 to 50 feet of the intersection at the same time signalling that he was either going to stop or turn. When he began to make the turn, it was useless to look into his mirror, because it was out of line with the road behind him, and he could not have seen the road in his rear. The position assumed by appellant would put all the responsibility on the driver of the car ahead. When the operator of the car ahead has given a signal, it would seem that the greater responsibility should be placed on the car behind, because the latter has a more complete field of observation. It was the duty of Hockensmith, on seeing the signal of the truck driver, to proceed cautiously with his car under control and to avoid passing the oil truck at the intersection.

This is not a case like Nold v. Higgins Lumber Co., 276 Pa. 195, in which a motor-cycle was overtaking a truck and the truck suddenly turned left into the motorcycle. In that case there was a conflict as to whether a signal was given. The situation as to the absence of a signal when direction was changed appeared in Smith v. Yellow Cab Co., 285 Pa. 229. The case is not parallel to Jamison v. Kamerer, 313 Pa. 1. There, as here, three vehicles were traveling in the same direction on the road. The defendant's car was the center one. The plaintiff, the driver of the last of the three cars, sounded his horn, turned to the left toward the center of the highway, and when his car was opposite the defendant's car, its driver,

without signalling her intention and without looking to see whether she could safely do so, turned her car sharply to the left directly into the path of the plaintiff's car.

Another position assumed by appellant is that it was negligence on the part of defendant's driver to continue to make his left turn after colliding with Hockensmith's car. It is argued that the collision diverted the automobile into an embankment and that the continuance of defendant's truck in its course caused it to come in contact with the Ford car a second time. A reading of the record leaves grave doubt as to whether this is what took place. Under the emergency confronting him the driver of the truck could not be held responsible for a second impact between the cars, if there was one, because, as stated by the court below, only a second elapsed between the first and the second impact. The truck driver stated that he took the course he did to avoid running over one of the women. Moreover, the emergency which was created was not brought about by the driver of the truck but by Hockensmith. We said in Brown v. French, 104 Pa. 604, 608: "No one can be charged with carelessness when he does that which his judgment approves, or where he omits to do that of which he has no time to judge. Such act, or omission, if faulty, may be called a mistake but not carelessness." See also Gehringer v. Erie Rys. Co., 301 Pa. 103, 107; Leslie v. Catanzaro, 272 Pa. 419; Donahue v. Kelly, 181 Pa. 93. To hold one liable for failure to act wisely in a sudden emergency, the emergency must be one of his creation: Sieb v. Central Penna. Traction Co., 47 Pa. Superior Ct. 228, 232; Weinberg v. Pavitt et al., 304 Pa. 312, 325; Casey v. Siciliano, 310 Pa. 238, 241. Here the emergency was caused by Hockensmith, not by the truck driver.

We are convinced from a careful reading of the record that the proximate cause of the lamentable accident was the act of Hockensmith in passing the truck at the inter-

298

section, in violation of the express provisions of the Motor Vehicle Code, and that the driver of defendant's truck was not negligent. The action of the court below in entering judgment for the defendant non obstante veredicto was, therefore, correct.

The judgment is affirmed.