Brennen et al. *v.* Pittsburgh Railways Company,
Appellant.

Argued May 26, 1936. Before KEPHART, C. J., SCHAF-
FER, MAXEY, LINN, STERN and BARNES, JJ.

*William A. Challener,* with him *J. R. McNary,* for appellant.

*Clair D. Moss,* with him *J. Boyd Duff, Jr.,* for appellees.

OPINION BY MR. JUSTICE SCHAFFER, June 26, 1936:

The minor plaintiff, at the time he received the injuries out of which this action grows, was 12 years, 4 months and 19 days old. He was struck by and knocked under defendant's electric railway car operating on the company's private right of way. The wheels of the car did not touch the boy; most of the car passed over him and he was removed from in front of its rear axle. He and his twin brother had been walking along a dirt or cinder road running parallel with and to the south of the railway tracks. The car which struck the plaintiff was moving in the same direction as the boys were. While attempting to cross the track to the north, the plaintiff was struck by the right front end of the car and knocked between the tracks, the car running less than its length over him. The brother saw it in time to halt and avoid it.

The question of defendant's liability lies in a narrow field of evidence. If the motorman should have seen the boy, on or about to cross the track in front of him in time to stop his car before reaching him and negligently failed to observe him and ran the boy down, the company should respond in damages. If, on the other hand, the boy stepped so suddenly in front of the car that the motorman using his best endeavors could not avoid strik-

ing him, it was an unavoidable accident from which no liability arises.

What is the evidence which the record portrays? As before stated, the two boys were walking along the dirt or cinder road which adjoined defendant's tracks on the south. They were approaching a crossing over the tracks which was a continuation of a street called Bellevue Avenue, which came from the north. The crossing was composed of cinder or slag placed between the rails and was used by automobiles and pedestrians. The purpose of the boys in crossing the track was to get to a truck which was to take them home. They had been attending a picnic in a park located to the south of the railway and the truck, driven by Michael Ford, was waiting for them on the north side of the tracks. As they walked along the road they were eating ice cream cones which one of them had purchased in the picnic park.

The plaintiff thus described the incidents leading up to and including the accident: After he left the park he had to cross the Perrysville highway in order to get on the dirt road. The plan offered in evidence shows it is 220 feet along the dirt road from the Perrysville highway to the Bellevue Avenue crossing on or near which the plaintiff was struck. The two boys proceeded along the dirt road and when they were about 30 feet from the Bellevue Avenue crossing, the plaintiff looked back and saw the street car on the far side of Perrysville highway, stopped taking on and letting off passengers. The two boys continued on along the road and when about 10 feet from the Bellevue Avenue crossing the plaintiff again looked back and saw the street car slowly crossing the Perrysville highway. He then looked to see whether a car was coming in the opposite direction (it was a double track line) and none was approaching. An automobile was coming south on Bellevue Avenue, which has a steep grade, and plaintiff hesitated "momentarily" to see which way the automobile was going, whether to the right or left on the street north of the tracks, or straight

across the crossing. He then walked "diagonally" across to go to the truck when he was struck by the street car. He had not observed it from the time he looked 10 feet from the Bellevue Avenue crossing, when the car was slowly proceeding over the Perrysville highway until he was struck. He said his brother saw the car in time to jump back. He stated that he "made a step or two" after crossing the first rail of the track before he was struck. He appreciated the danger in crossing the track because he said when he looked up the second time he did so for the purpose of seeing whether it was safe to go on, that *he knew at the time* he ought to look for a street car, and if he did not look it might be dangerous. He testified that as he was intending to go diagonally over the crossing he did not hear any bell or other warning sounded by the street car and if there had been one sounded, he would have heard it.

The brother testified that he knew there was a street car on the track at the time they intended to cross it, that he had seen it coming slowly across the Perrysville highway when he was about 10 or 12 feet from the Bellevue Avenue crossing. He described the approach of the automobile on that avenue in substantially the same way his brother did. Continuing his account of what occurred he said he trudged along, "hesitated momentarily, and happened to look up and see the street car and jumped back." He "hollered at" his brother "but it was too late." The conclusion would seem inevitable that had plaintiff likewise looked up, he too would have seen the car and avoided it.

Michael Ford, the man who was driving the truck in which the boys were to return home, a witness called by plaintiff, who was about 35 feet from the scene of the accident, and whose opportunity for observation would appear to have been the best of any witness, said that he saw the street car when it was "practically on the crossing" and saw "these two boys jump," the brother jump back, and the plaintiff get hit with the right front end

of the street car. He said the street car was going about 15 or 18 miles an hour, and when plaintiff stepped onto the track the car was only 3 or 4 feet from him, that the car had but 3 or 4 feet in which to stop.

Gertrude Lyons, one of plaintiff's witnesses who was walking along the same road as the two boys and behind them, estimated the speed of the street car at 30 to 35 miles an hour. She had no qualification for judging speed. We think her testimony as to speed was entirely unreliable. It is contradicted by the physical fact that the car ran less than its own length after striking the plaintiff. The distance a car runs after colliding with an object is an important factor in reaching a conclusion as to speed: *Crone v. Harrisburg Rys. Co.*, 293 Pa. 428, 143 Atl. 108; *Donahue v. Phila. Rapid Transit Co.*, 293 Pa. 253, 142 Atl. 291; *Justice v. Weymann*, 306 Pa. 88, 158 Atl. 873. She said plaintiff "stepped out about two or three feet," that there were 2 or 3 feet between him and the street car at the time he stepped on the track. She said the car made a quick stop after it hit the boy, stopping in about the length of the car.

The motorman testified that the boy suddenly stepped into the track when the car was only 4 feet away from him. In this he was corroborated by other witnesses, passengers on the car.

Disregarding entirely all evidence produced by defendant which throws an entirely different light on the case and judging it solely by that offered by plaintiffs, we are of opinion that no recovery can be allowed. Plaintiff knew the car was approaching. Just before stepping on the track he did not look to see where it was, his brother did, saw it, stopped and avoided injury. Plaintiff admits that he knew he should have looked for the car, and if he did not do so that it was dangerous, and that he did not look before stepping on the track. Whether this convicts him of contributory negligence as a matter of law or not, considering his age, it does establish that the motorman in the sudden movement made

by plaintiff did not have warning sufficient to give him opportunity to stop his car before striking the boy. He could not be said to be negligent in the sudden emergency which the plaintiff created. The striking of the boy was an unavoidable accident from which no liability on defendant arises. "Negligence cannot be imputed because of the failure to perform a duty so suddenly and unexpectedly arising that there is no opportunity to apprehend the situation and to act according to the exigency:" *Eastburn v. United States Express Co.*, 225 Pa. 33, 73 Atl. 977; *Jamison v. Kamerer*, 313 Pa. 1, 169 Atl. 231; *Miller v. Southern Asphalt Co.*, 314 Pa. 289, 171 Atl. 472, and cases cited; *American Law Institute Restatement, Torts*, Sec. 296.

The judgments are reversed and are here entered for defendant.

DISSENTING OPINION BY MR. JUSTICE MAXEY:

In my judgment it was proper to submit to the jury the question of defendant's negligence, and I think there was sufficient evidence to sustain the verdict. Therefore I dissent from the majority opinion entering judgment for defendant. I agree with it where it states that "if the motorman should have seen the boy, on or about to cross the track in front of him in time to stop his car before reaching him and negligently failed to observe him and ran the boy down, the company should respond in damages." There was evidence from which the jury could have found that way.

The jury having found a verdict for plaintiff, the evidence must be viewed in the light most favorable to him, and reasonable inferences must be drawn in favor of, and not against, his right to recover: *Adams v. Gardiner*, 306 Pa. 576, 160 A. 589; *Dempsey v. Cuneo Eastern Press Ink Co.*, 318 Pa. 557, 179 A. 220.

The minor plaintiff, a boy a little more than twelve years of age, was walking with his twin brother in an easterly direction along a narrow cinder or dirt road

parallel to and to the south of defendant's right of way, and in the same direction in which the trolley car which injured him was traveling. A space of 25 or 30 feet separated the road from the tracks. The boys proceeded some 200 feet along the road towards another unimproved highway which crossed at right angles and led immediately northward beyond the tracks. On the northeast corner of this crossing a truck waited to take them home. Obviously, as they neared the crossing, they veered to their left, towards the north, in order to cross the tracks diagonally to the truck. When they were still 30 feet, more or less, from the nearest track plaintiff looked and noticed the trolley standing motionless to take on passengers 230 or 240 feet away. The boys approached the tracks, and when ten feet from them plaintiff looked again and saw the trolley moving slowly towards them, still 200 feet away. He also saw an automobile approaching down the intersecting highway, across the trolley tracks. He watched the car, because he had to find out whether it would turn before reaching the trolley tracks or proceed across them. He continued towards the tracks, and had just entered them by two or three feet when the trolley car struck him on the left part of his back. His twin brother, slightly behind and to his right, escaped injury by jumping back.

The tracks ran in a straight line from the point where the trolley car stopped to where the accident occurred. It was daylight and the motorman had a clear view. If he had been attentive he would have seen the boys approaching the tracks and would naturally have inferred that they intended to cross them and he would have reduced his speed and have given warning, but he gave no warning by bell or otherwise. He continued on his way until the boy was struck and then he attempted to make a "quick stop." This rushing ahead with the boy thus in sight was, to my mind, negligence on the part of the motorman. "It is the duty of a motorman as his car moves forward to keep a constant watch of the cart-

way and track before him. To run down a small child in an unobstructed street in broad daylight is evidence of negligence, unless the child suddenly darts out into the track of the car. If the motorman failed to see the child, who was approaching the track in plain view, he was negligent, and if he saw the child in time to stop and failed to do so, he was equally negligent": *Goldberg et al. v. P. R. T. Co.*, 299 Pa. 79, 83, 149 A. 104. "Our decisions are uniform in holding that where, as here, the evidence is conflicting as to whether or not the motorman could have seen the child in time to prevent the accident, the case is for the jury": *Quattrochi v. Pittsburgh Railways Co.*, 309 Pa. 377, 381, 164 A. 59.

This is not a case where the undisputed evidence is that a child suddenly darted upon the track in front of an approaching car as are the cases cited in the majority opinion and the cases cited in some of those cases. In such a situation, no negligence can be imputed to the motorman or driver for he is not legally bound to anticipate a "sudden movement" by a pedestrian. But when a motorman or driver sees, or by the exercise of vigilance could see and by the application of common sense would reasonably believe, that a boy was headed for a point on the car's track, a short distance before the moving car, he should exercise that care not to strike the boy which is dictated by normal humane instinct. There was some evidence that the trolley car was travelling, for at least a portion of this short distance, at between 30 and 35 miles an hour, but the testimony of the witness who gave this evidence is ruled out by the majority opinion with the statement that she was "entirely unreliable." I would not from the record so characterize this witness. A person does not have to own or drive a car to be able to judge the speed of a vehicle. Almost any intelligent person who is observant can give a fairly accurate opinion as to the speed of a moving street car or automobile. The jury is best fitted to weigh such person's testimony. There was no objection whatever to this witness's testi-

mony on the ground of lack of competency, or on any other ground. Furthermore, I regard the speed of the street car as of minor importance. If it was running at an excessive rate of speed, that might, under the circumstances, be negligence. On the other hand, if it was running slowly, and the boy's intention to cross the tracks was obvious, or would have been obvious, to an attentive motorman, such a moderate speed makes the striking of the boy even more inexcusable.

This case was typically one for submission to a jury. I would accept the jury's finding as to the negligence of defendant's servant, but I would still further reduce the amount of the verdict in favor of the minor plaintiff, from the figure of $6,679 to which the court below reduced it from $8,500. I think that even the reduced figure of $6,679 was still somewhat excessive.