Schiele et al. *v.* Motor Freight Express, Inc., et al.,
Appellants.

Argued January 12, 1944. Before MAXEY, C. J., DREW,
LINN, STERN, PATTERSON, STEARNE and HUGHES, JJ.

*Daniel G. Murphy,* with him *George Eves,* for appellants.

*Allan K. Grim,* with him *Stevens & Lee,* for appellees.

OPINION BY MR. JUSTICE HUGHES, March 20, 1944:

These appeals are taken from the refusal to grant a new trial or to enter judgment non obstante veredicto. On the morning of October 26, 1940, about 7:30 a.m., a coal truck owned by John Olivia and driven by his employee, Thomas Pagano, attempted to pass a two-ton G. M. C. truck owned by Harold Levan and driven by his employee, Ernest Schiele. Claude Parsons, another employee of Levan, was riding in this truck. Both these trucks were traveling easterly from Reading toward Boyertown over a 16-foot concrete highway which had shoulders four feet wide. The atmosphere was misty, but at or near the scene of the accident a pocket of dense fog lay over the road. Schiele was traveling about 35 miles an hour, but as he approached the fog pocket he reduced his speed and Pagano, driving a coal truck, attempted to pass to the left of Schiele. When Pagano was almost alongside of the G. M. C. truck driven by Schiele, and fully occupying the left lane of the highway in the direction they were traveling, the truck of the Motor Freight Express, Inc., driven by Holtzer, emerged from the fog. Pagano, driving the coal truck, turned to the left, went over the berm, and down into a field. Holtzer drove to his right, getting his right wheels on the berm, and after so proceeding for 36 feet, swerved back across the concrete highway onto the left side of the road and collided with the G. M. C. truck driven by Schiele, injuring Schiele and killing Parsons.

Holtzer states that the weather was hazy and visibility was reduced to 50 or 75 feet; that he had come from Philadelphia and had encountered pockets of fog; that he was driving a truck and trailer which had a capacity of a little over ten tons when loaded, but on the morning in question carried between six and seven tons; that his speed was between 25 and 30 miles an hour, 30 miles be-

ing the maximum speed for a truck of the size he was driving under the laws of Pennsylvania. He further states that as he came to the scene of the accident he met a somewhat heavier blanket of fog, he could not see more than 50 or 75 feet, and at that time he was going 25 to 30 miles an hour. He first saw the coal truck 50 to 75 feet from him and on his side of the highway. He states he never saw the G. M. C. truck, driven by Schiele, yet no testimony ever places the coal truck in advance of the G. M. C. truck. To travel into a pocket of heavy fog with vision limited to 50 or 75 feet, driving a ten-ton truck and trailer carrying a load of six or seven tons and going at a speed of 25 to 30 miles an hour, would be sufficient evidence to submit to the jury, from which they might find the driver negligent. Such celerity of movement under the conditions which he describes could not be determined to be with due care: *Mason v. C. Lewis Lavine, Inc.*, 302 Pa. 472, 477, 153 A. 754. In driving his truck through a fog bank, which was clearly visible in advance, at a speed of 25 to 30 miles an hour, it must be held he was testing a manifest danger: *Janeway v. Lafferty Bros.*, 323 Pa. 324, 328, 185 A. 827. "Cautious movement in fog is required of motorists (as it always has been of navigators). To take 'a leap in the dark' is to invite self-injury or self-destruction. On the night of this unfortunate accident the plaintiff had been well aware of the presence of fog on the highway. Even though he characterized this as 'light fog', he should nevertheless have proceeded with the utmost caution both from fog bank to fog bank and through them. * * * Fog is fog and its obscurative qualities are known to all individuals who possess even the slight amount of intelligence legally required to qualify one to drive an automobile on the public highways.": *Shoffner v. Schmerin*, 316 Pa. 323, 326, 328, 175 A. 516.

The court below properly stated: "It is true that the careless and unlawful conduct of the driver of the coal truck, in attempting to pass the G. M. C. truck, under the circumstances, was a proximate cause of the accident,

but it was not necessarily the sole proximate cause. 'Where there would have been no injury whatever but for the continuing negligence of the defendant who first put the plaintiff in peril, and which existed when the negligence of the other turned the peril into actual injury, the negligences are concurrent and both defendants are jointly and severally liable for the injuries thereby occasioned.' *Hughes et ux. v. Pittsburgh Transportation Co. et al.*, 300 Pa. 55, 60." *Weinberg v. Pavitt et al.*, 304 Pa. 312, 326, 155 A. 867.

"We have frequently stated that the sudden emergency rule will not apply if the emergency arises through the prior negligence of him who seeks the protection of the rule: *Montgomery v. Phila.*, 270 Pa. 346; *Lieberman v. Pittsburgh Rys. Co.*, 305 Pa. 412; *Stewart v. P. R. T.*, 103 Pa. Superior Ct. 366.": *Casey v. Siciliano*, 310 Pa. 238, 241, 165 A. 1.

Although it is clear from the evidence that the appellant was a party to bringing about the sudden emergency, he complains of the court's charge as setting up a wrong standard of care under such circumstances. The whole of the court's charge on this point must be considered, and therein it is pointed out that the driver of the truck must use such care as a reasonable driver is likely to use "in a sudden emergency"; that he was not necessarily negligent if "he showed bad judgment" or "did not do the thing which upon cool judgment afterwards might be seen to have been the best thing to have done." The charge of the court covered the rule we have laid down, that "negligence cannot be imputed because of the failure to perform a duty so suddenly and unexpectedly arising that there is no opportunity to apprehend the situation and act according to the exigency": *Eastburn v. U. S. Express Co.*, 225 Pa. 33, 73 A. 977; *Post v. Richardson*, 273 Pa. 56, 59, 116 A. 531; *Brennen v. Pittsburgh Railways Company*, 323 Pa. 81, 86, 186 A. 743; *Gaskill v. Melella*, 144 Pa. Superior Ct. 78, 82, 18 A. (2nd) 455. See also *Mulheirn v. Brown*, 322 Pa. 171,

176, 185 A. 304; *Miller v. Southern Asphalt Company et al.,* 314 Pa. 289, 297, 171 A. 472.

The appellant questions the right of the trial judge to permit recovery of damages for future loss of earning power "in the absence of evidence of permanent injury." Dr. Fox testified that Schiele had a ruptured kidney; he had a fractured rib on the left side; a fractured left leg; that he had both the tibia and fibula on the left side and the femur broken; he had a weakness in his left abdominal wall which appears like a tear of the soft parts, particularly muscles perhaps; when he would stand it would protrude a bit, and when he would strain it would protrude more, and he complained of a weakness there when he was active. The doctor further testified that Schiele had three fractured ribs and a ruptured kidney, and that he gave "treatment, of course, to his left extremity, where he complained of a lot of weakness and pain, [which] continued even to the time that I last saw him." This medical testimony was supplemented by proof that Schiele could no longer drive a truck on account of the weakened muscular condition of the abdomen which requires him to wear a belt. He now has a job as a janitor at considerable less pay than for the work he was doing before the accident. The trial judge charged: "He now has a rupture which may I believe call for an operation. I don't think there was any testimony that he has an incurable rupture, but he does have a weakened muscular condition there which causes him to wear a belt and which was testified to by the doctor as existing, and there is evidence from which you may find that it has apparently caused him some loss of earning power." In *McCaffrey v. Schwartz,* 285 Pa. 561, 567, 132 A. 810, it was stated: "It was their (the jurors') duty to determine, from the evidence, whether plaintiff's impairment of earning power would last until the end of his life expectancy, or, if not, how soon it would probably change for the better, and to adjust their award of damages on that score accordingly." Until the rupture of the muscles

of the abdomen could be corrected by operation, if it could be so cured, there was a future loss of earning power to the plaintiff, Schiele, for which he was entitled to recover in damages. The appellants' complaint on this point is not well taken.

After reading the whole of the record, we are satisfied there is sufficient competent testimony to show that negligence of Holtzer in the operation of the truck of the Motor Freight Express, Incorporated, existed prior to and concurrent with that of Pagano and was a proximate cause of the accident.

Judgments affirmed.