Liuzzo, Appellant, *v.* McKay.

Argued March 16, 1959. Before Jones, C. J., Bell, Musmanno, Jones, Cohen, Bok and McBride, JJ.

reargument refused July 2, 1959.

*Leland W. Walker,* with him *Walker & Kimmel,* for appellant.

*Archibald M. Matthews,* for appellees.

184

Ralph E. Liuzzo was killed in a motor vehicle accident on June 28, 1956 and as a result this action in trespass was instituted against the defendants by his widow, Margaret Liuzzo, as Administratrix of his estate. At the close of plaintiff's testimony a compulsory nonsuit was entered as to Bucks Rental Co., and at the close of all the testimony the trial judge directed a verdict in favor of Charles McKay, Miller Bros. and Co., Inc. and John Russell Nice. The court below refused to grant a new trial or take off the compulsory nonsuit and plaintiff appealed.

Plaintiff contends that it was not the function of the court to say, as a matter of law, that the defendant McKay was free of negligence and that decedent was guilty of contributory negligence. The evidence which plaintiff presented of McKay's negligence came from the testimony of state trooper, Blomgren, who investigated the accident. The state trooper testified as to the facts he found upon his investigation and as to a statement made to him by Nice, whom he interviewed at the scene of the collision. While this statement was clearly hearsay evidence as to McKay, who was not present when it was made, there was no objection to it at the trial and on appeal it will be considered as competent evidence. Interpreting the testimony of the state trooper most favorably to plaintiff, as we are required to do, the pertinent facts are:

On June 28, 1956, at about 9:45 p.m., on a clear, dry night, decedent was operating a tractor-trailer in an eastwardly direction on the Pennsylvania Turnpike. Charles McKay, was operating a tractor-trailer owned by Miller Bros. and Co., Inc., in the same direction, in the right or slow lane of the highway, some distance in front of decedent. According to Nice's statement, as the two tractor-trailers proceeded east, they were both passed by an automobile operated by Nice. Nice's car

went out of control almost immediately after passing the tractor-trailer of McKay and went off the hard surface of the highway on to the berm of the road, creating a cloud of dust. At this time McKay, who was going between 35 and 40 miles an hour slowed his vehicle and drove to the left or fast lane of the highway in order to pass in safety. The state trooper also testified to a statement made to him by McKay at the scene of the collision. This statement showed how McKay, when faced with this sudden emergency, immediately applied his brakes and "was trying all ways to miss him . . .". In attempting to "miss him" McKay, seeing the cloud of dust off on the right, slowed his vehicle and turned to the left in order to avoid the vehicle which was concealed in this cloud of dust. However, the car of Nice came out of the dust, made a U turn and proceeded in a westwardly direction in the eastbound lane of the Turnpike directly toward McKay. McKay therefore veered back onto the right or slow lane in an attempt to avoid a collision. His attempt to avoid Nice's automobile almost succeeded. However, the left rear tandem wheels of the tractor-trailer collided with the automobile. At this time his speed was reduced to about 15 miles per hour. As the tractor-trailer and Nice's automobile were thus engaged, they were violently struck in the rear by the tractor-trailer operated by the decedent. There is no evidence in the case as to the speed at which decedent was operating the tractor-trailer immediately before the accident or in which lane of the highway he was travelling. That is all the evidence plaintiff presented as to negligence in her case in chief. The trial judge granted the motion of Bucks Rental Co. for a compulsory nonsuit but denied the motions of MacKay and Miller Bros. and Co., Inc. The last named defendants then presented their evidence. Plaintiff is, of course, entitled to any help her case receives from any fair inference from

this testimony. Upon analysis, however, this testimony reinforces McKay's version of the accident as he explained it to the state trooper at the scene.

It is difficult to see how it can be successfully argued that there was any negligence whatsoever on the part of McKay. It was undoubtedly his duty to keep his vehicle under control so as to be able to stop within a reasonable time in an emergency. *Shaffner v. Schmerin,* 316 Pa. 323, 175 Atl. 516; the evidence in this case however, showed careful management by McKay. Under the circumstances he did what a reasonably prudent man would do in endeavoring to move his vehicle from the path of the automobile of defendant Nice. When Nice's car raised the cloud of dust McKay was then faced with an imminent emergency which called merely for his best judgment under the circumstances . *Moore v. Meyer & Power Co.,* 347 Pa. 152, 31 A. 2d 721. Of course, no man has a right to continue his car or truck in motion if such motion makes an injury to another car or to any person inevitable or reasonably probable. *Nark v. Horton Motor Lines, Inc.,* 331 Pa. 550, 1 A. 2d 655. However, we do not have a case here of a man who drove into the dust cloud, thereby testing a danger and creating his own emergency. Had Nice's car remained on the right side of the road McKay would have had ample room to pass on the left. In this emergency McKay was not under the absolute necessity of instantly stopping. His choice of alternatives in meeting such an emergency, i.e. slowing down as much as possible and attempting to avoid the oncoming car by driving into a different lane was certainly reasonable under the circumstances. What we said in *Polonofsky v. Dobrosky,* 313 Pa. 73, 76, 169 Atl. 93, is applicable here: "This was all so sudden and unusual a situation that this defendant comes within the rule laid down in the case of Wilson v. Consolidated Beef Co., 295 Pa. 168, and kindred cases, to

the effect that negligence may not be implied because of failure to perform a duty so suddenly and unexpectedly arising that there was no opportunity to apprehend the situation and to act according to the exigency. When one finds himself in a position of danger which is not the result of his negligence he is not responsible if he makes a mistake in judgment in getting out. An honest exercise of judgment is all that is required of him even if he could have done better had he had time to deliberate."

Examining the evidence from the standpoint most favorable to plaintiff and giving to her the benefit of all fair inferences which may be drawn therefrom, leads only to the conclusion that no negligence was shown on the part of McKay. The jury could not be permitted to find a verdict for plaintiff. *Brennan v. Pittsburgh Railways Co.*, 323 Pa. 81, 186 Atl. 743; *Mulheirn v. Brown*, 323 Pa. 171, 185 Atl. 304; *Miller v. Southern Asphalt Co.*, 314 Pa. 289, 171 Atl. 472. It follows that no verdict could be permitted against Miller Bros. & Co., Inc. on the theory of respondeat superior.

Since we have decided that these defendants were not guilty of negligence it is unnecessary to decide whether plaintiff was guilty of contributory negligence as a matter of law, or to discuss any other point raised by appellant although all of them have received our consideration.

Defendant, John Russell Nice, did not file an appearance nor appear in court. The appellant has told us it is immaterial to her whether he is a defendant in this proceeding and accordingly the judgment of the trial court as to him is affirmed.

There is no testimony in the case whatsoever, from any source, to connect the defendant Bucks Rental Co. in this matter and thus the compulsory nonsuit granted in this defendant's favor is also affirmed.

Judgment affirmed.

188

I think that the jury should have passed on the behavior of Liuzzo and McKay.

Plaintiff's decedent is entitled to the presumption, unless it was rebutted by evidence, that he used due care. Whether there was such evidence and whether it was credible was for the jury.

There are several points of difference about the conduct of McKay. According to the State trooper, McKay told him that Nice's car passed him and slowed down; that McKay, going 40 to 45 miles per hour, pulled out to pass Nice or get out of his way; that as he got alongside, Nice speeded up and left McKay on the outside lane; that McKay signalled and got back on the right lane; that Nice lost control, spun around, and stopped; that McKay tried to miss Nice and almost did, but one wheel hit Nice at the right bumper and spun him around; that McKay was then hit in the rear; and that at the moment of impact he was going 15 miles per hour. It will be noticed that in this statement McKay made no mention of a cloud of dust or of his moving a second time into the fast lane. The inference is also made that the thing that turned Nice around was his being hit by McKay.

Nice told the trooper that he passed a tractor-trailer and another car; that as he then went to his right he went into a spin and came to a stop on the passing lane; and that as he was going to get out of his car he was hit in the rear and spun around.

On the stand McKay's version was substantially different. It was that Nice passed him but swerved back in too closely so that McKay had to brake; that Nice went on a little farther and slowed; that McKay pulled out to pass but when alongside Nice the latter speeded up, leaving McKay in the passing lane; that he pulled in to the right lane and went on down the mountain to the curve; that when he entered the curve

he saw a cloud of dust across the road ahead; that as he went on a bit farther he could see Nice's car moving on the shoulder of the road; that he signalled and moved into the passing lane again; that Nice swerved across both lanes right in front of McKay and headed back towards him; that he almost missed Nice but hit his rear bumper and stopped; and that when he hit Nice he was going two to four miles per hour. He added that he was stopped for two or three minutes before being hit by plaintiff's decedent, but he later changed this to two or three seconds.

Thus for the first time we hear from McKay about the cloud of dust, and Nice's emergence from it headed back west, and McKay's second excursion into the fast lane. The discrepancies between the two versions are obvious.

If the jury believed the first version, that McKay went into the fast lane only once, they could have found negligence in his remaining in the slow lane and failing to avoid Nice although he had part of one lane and the shoulder in which to do so. If they believed the second version it was for them to evaluate the emergency, and McKay's going twice from one lane to the other, and how far down the mountain he drove before trouble developed.

There is a large question mark on McKay's credibility and distinct work for the jury to do in determining what actually happened and in assessing negligence. And whether McKay was struck minutes or seconds after stopping would bear on Luizzo's contributory negligence.

The case should have been allowed to proceed to verdict.

Mr. Chief Justice JONES and Mr. Justice MUSMANNO join in this dissent.