## Richard v. Chester Extended Care Center

*Stewart C. Crawford,* for plaintiff.
*John A. Luchsinger,* for defendant.
*John J. Walsh,* for additional defendant.

McGOVERN, J., April 15, 1980—Plaintiff in this case is a 76 year old woman who was transferred from the psychiatric facility of additional defendant, Crozer-Chester Medical Center, to defendant, Chester Extended Care Center, suffering from "organic brain syndrome," at approximately 2:00 p.m. on June 13, 1975. At approximately 8:15 p.m. on June 13, 1975, plaintiff exited a window in her second floor room at defendant's facility, thereby sustaining extensive injuries. The trial court granted additional defendant's motion for a nonsuit as to Crozer-Chester Medical Center, said motion having not been objected to by plaintiff. Thereafter, the jury returned with a verdict in favor of defendant and against plaintiff.

Plaintiff now moves for a new trial arguing that the trial judge committed reversible error in its instruction to the jury concerning the standard of care to be applied in deciding the issue of contributory negligence and in its instruction to the jury concerning defendant's relationship to plaintiff in deciding the issue of the negligence of defendant.

In regard to plaintiff's first contention, the trial court instructed the jury that plaintiff was subject to the so-called "reasonable man" standard in evaluating the issue of plaintiff's contributory negligence; however, the jury was also extensively instructed concerning the evaluation of the circumstances of this incident, including the reasons for plaintiff's presence at defendant's facility, the knowledge of both plaintiff and defendant, and the conduct of both plaintiff and defendant.

Plaintiff suggests that the trial court develop a charge which requires the jury, in evaluating contributory negligence, to apply the law analogously to the situation wherein a child's contributory negligence must be evaluated. It would thus appear

that plaintiff would have the trial court instruct the jury that it must ascertain the particular level of mental competency and mental awareness of a particular plaintiff and then apply a standard of care which it attributes to a person with that degree of mental competency and mental awareness prior to determining whether or not contributory negligence exists. While there may be some esoteric areas of science which allow for analysis of conduct in light of one's intelligence quotient or mental competency, acuteness and awareness, it has long been recognized in Anglo-American jurisprudence that it is impossible for the layman to ascertain specific mental states at a given point in time with a sufficient degree of accuracy so as to insure that justice is provided in a jury trial courtroom.

It is further clear that human experience, at least as it has been analyzed and recorded, does not comport with plaintiff's understanding of human conduct. There is no empiric evidence allowing the conclusion that the degree of a person's mental competency or intellectual acuteness bears any realistic relationship to such person's negligent or tortious conduct.

Plaintiff's recommended standard further suggests to this court that the entire matter of plaintiff's intelligence quotient or acuteness or competency is to be left to the jury and that each juror then would ascertain the particular level of plaintiff's competency as he or she saw it at the material point in time and then apply some undefined adjusted or weighted standard of care. Plaintiff carefully avoids defining that standard of care; and such avoidance is understandable because to expect that a trial court would be in a position to communicate rationally in understandable terms to

a jury the concept of weighted care related to a particular state of mind at a given point is unrealistic, awkward and counterproductive to the concept of equal justice. Justice can only be comported to the extent that understandable principles of law can be equally applied in a series of decisions involving human conduct. The suggestion that the standard itself must be varied according to the infinitely multifaceted discernible effects of the human brain is, we respectfully suggest, not to be adopted as a theory of jurisprudence and could well be considered rash by some.

Plaintiff also overlooks the aspect of the trial court's charge in this case and the law, as at least we see it to be, that although a reasonable man standard is to be applied, the jury may consider the relevant circumstances of plaintiff's position or condition at the time of the incident in question. So, if a plaintiff is intoxicated or asleep or somnambulant or in any one of a number of physical states or mental states or conditions, those circumstances are relevant to an evaluation of the plaintiff's conduct, but they are circumstances to which a standard is applied, not a standard in and of itself. A standard is not changed before its application, since then the standard would be as varying as the level of human circumstances and judicial understandings of that circumstance. If such a variable rule is to be applied to the potential variable circumstances of plaintiffs generally, then (applying a variable to a variable) indeed there would be no vehicle to assure that all jurors deciding a matter would be acting upon the same legal principles. There could be no discernible or rational standard of justice. The Superior Court addressed this issue in Fredericks v. Castora, 241 Pa. Superior Ct. 211,

215-16, 360 A.2d 696, 698, (1976), when it declined to apply a higher standard of care (to vary with the experience of defendant), as requested by plaintiff. There, the court stated that:

"Other jurisdictions have confronted the problem of varying degrees of care and sought to control the ceaseless variation of the concept of negligence by establishing a single standard: 'care does not increase or diminish by calling it names. We think the abstract concept of reasonable care is in itself quite difficult enough to grapple with and apply in our law without our courts gratuitously conferring honorary degrees upon it. There is only *one* degree of care in the law, and that is the standard of care which may reasonably be required or expected under all the circumstances of a given situation. . . .' Spence v. Three Rivers Building & Masonry Supply, 353 Mich. 120, 130, 90 N.W. 2d 873, 878 (1958). Cf. Hoover v. Pennsylvania R. R. Co., 405 Pa. 642, 177 A. 2d 98, cert. denied, 369 U.S. 873, 82 S.Ct. 1142, 8 L.Ed. 2d 276 (1962); Schiele v. Motor Freight Express, Inc., 348 Pa. 525, 36 A. 2d 467 (1944)."

Accordingly, the proper standard of care is that of the reasonable man, to be applied considering the circumstances of the parties and the incident. This is the instruction elaborated upon in the instant charge and, therefore, plaintiff's motion for new trial upon this basis should be denied.

It is further noted that, even assuming arguendo that plaintiff's request for charge was an accurate statement of the law, in the case at bar there was not a scintilla of evidence suggesting plaintiff was disabled or mentally deficient. The evidence indicated that a member of plaintiff's family was aware

of her condition, her presence and her location in defendant's facility. The evidence also indicated that immediately preceding the incident in question there was a member of defendant's staff who was in fact with plaintiff in her room and observed no signs of difficulty. This factual setting distinguishes the present case from the interpretation of Priese v. Clement, 70 D. & C. 2d 47 (1974), suggested by plaintiff on pages 5 and 6 of her brief.

Confronted then with a record which suggests that an earlier hospitalization in a psychiatric unit (for whatever cause) was completed and plaintiff discharged that and with further evidence indicating no special instructions from psychiatrists or family or family physicians, and defendant at best being charged with knowledge of some confusion and a tendency to wander by plaintiff, and being in the business of providing certain health and care services, this court, after review of the entire body of evidence, is unable to discern any evidence which reasonably creates an inference of nonnormal mental capacity. This is not to say that there is no evidence concerning the mental condition of plaintiff, but rather it is to say that there is no evidence, expert or otherwise, as to any specific condition which *could* reasonably relate to plaintiff's own injury whether it be falling from a window or some other kind of reasonably foreseeable misadventure. Accordingly, the provisions of the Restatement, 2d, Torts, §464 are applicable, particularly comment g, which provides in pertinent part that "[m]ental deficiency which falls short of insanity, however, does not excuse conduct which is otherwise contributory negligence."

Therefore, even assuming arguendo that plaintiff's principle of law is adopted, or is the law of the

Commonwealth of Pennsylvania, there is not a sufficient evidentiary basis in the case at bar as it was presented so as to form a foundation for the requested jury instruction. Thus, on this basis and in justice, this portion of plaintiff's motion for new trial should be denied. It is further appropriate at this point to observe that there is no testimony in this record, nor was there any offered, to establish what standard of care should be applied to an individual of some reduced capacity, were a standard different than the reasonable man standard is to be applied. There was, in other words, no evidence presented indicating what, if any, standard of care could be expected from plaintiff or one in plaintiff's condition.

Concerning plaintiff's second ground wherein it is contended that the trial court gave inadequate instructions concerning the law as to the relationship between the parties, plaintiff's ground appears to be mainly one concerning emphasis rather than the essence or correctness of legal instructions given or not given. The jury was instructed concerning the circumstances of this case and to consider these circumstances. That included considering defendant, its business and the relationship between defendant and plaintiff and plaintiff's condition. It is so that detailed instructions were not given concerning the health care industry; and it is further true that the jury was instructed that defendant is not a guarantor or insurer against all injury. The jury was charged that a corporation, as a legal entity, is treated in the case at hand the same as an individual and that it is for the jury to determine what the facts or circumstances of this case are, thence to ascertain what a reasonable man providing the services which defendant provided

would do under those circumstances at that time. The concept of foreseeability of the risk in question was discussed and the jury was instructed that an institution providing such services is required to protect against foreseeable risks to such a degree as it finds that a reasonable man would under the circumstances. The jury was further cautioned several times against guessing or speculating as to what happened. The two theories of plaintiff's case were submitted to the jury: one, that defendant negligently provided the services for which plaintiff contracted by failing to safeguard the body of plaintiff against injury such as she sustained; and, secondly, that defendant maintained the facility negligently by failing to have some guard or screen on the window through which plaintiff fell. The circumstances concerning the relationship of plaintiff and defendant were described to the jury as being relevant to its consideration of matters which had to be considered by the jury in applying the law of this case.

The jury was specifically told that defendant is charged with knowing what it knew and was observable at the time of this incident, including the condition of plaintiff, and that this bore upon defendant's responsibility to act as a reasonable man would act in the same business as defendant.

Plaintiff objects because this aspect of the initial charge was not reviewed extensively following a jury question, and objects because the trial court did not use the specific terminology requested by plaintiff, which is not a proper basis for a new trial. This jury was also instructed to consider the answer to questions in context with all the trial court's charge; and that all the points of law given were to be considered and applied according to the facts

they found; and no emphasis as to any part of the charge or answer was intended by the trial court. A thorough review of the record as it now exists, together with the extensive bench notes taken by the trial judge, indicate that the issue was not unjustly or unfairly presented to the jury; therefore, plaintiff's second ground upon which her motion for a new trial is based must be denied.